343 So.2d 698 (1977)
STATE of Louisiana
v.
Frank J. AMATO.
No. 58619.
Supreme Court of Louisiana.
February 28, 1977.
*700 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Geraldine S. Veazey, Asst. Dist. Atty., for plaintiff-appellant.
Joseph Neves Marcal, III, New Orleans, for defendant-appellee.
DENNIS, Justice.
Defendant, Frank J. Amato, was charged by bill of information with five violations of the state obscenity statute, La.R.S. 14:106. These charges were based upon his alleged conduct in exhibiting five pornographic magazines for commercial gain. Upon defendant's motion, the district judge quashed the bill of information on the grounds that portions of paragraph A, sub-section (2) of the statute are unconstitutionally vague and overbroad. The State appealed.
The pertinent parts of La.R.S. 14:106 involved in the district judge's decision provide:
"A. The crime of obscenity is the intentional:
"* * *
"(2) Participation or engagement in, or management, production, presentation, performance, promotion, exhibition, advertisement, sponsorship or display of, hard core sexual conduct when the trier of fact determines that the average person applying contemporary community standards would find that the conduct, taken as a whole, appeals to the prurient interest; and the hard core sexual conduct, as specifically defined herein, is presented in a patently offensive way; and the conduct taken as a whole lacks serious literary, artistic, political or scientific value.
"Hard core sexual conduct is the public portrayal, for its own sake, and for ensuing commercial gain of:
"(a) Ultimate sexual acts, normal or perverted, actual, simulated or animated, whether between human beings, animals or an animal and a human being; or
"(b) Masturbation, excretory functions or lewd exhibition, actual, simulated or animated, of the genitals, pubic hair, anus, vulva or female breast nipples; or
"(c) Sadomasochistic abuse, meaning actual, simulated or animated, flagellation or torture by or upon a person who is nude or clad in undergarments or in a costume which reveals the pubic hair, anus, vulva, genitals or female breast nipples, or the condition of being fettered, bound or otherwise physically restrained, on the part of one so clothed; or
"(d) Actual, simulated or animated, touching, caressing or fondling of, or other similar physical contact with, a pubic area, anus, female breast nipple, covered or exposed, whether alone or between humans, animals or a human and an animal, of the same or opposite sex, in an act of apparent sexual stimulation or gratification; or
"(e) Actual, simulated or animated stimulation of a human genital organ by any device whether or not the device is designed, manufactured and marketed for such purpose.
"* * *."
In his reasons for judgment the district judge expressed his personal abhorrence of obscenity, and recognized the difficulties implicit in defining it. Nevertheless, he found that the failure of the existing statute to inform clearly a reader of common intelligence what is proscribed renders the law unconstitutional. These views do not lack persuasiveness, and we find them similar to those held by a respectable minority of the United States Supreme Court. Mr. Justice Brennan, with whom Mr. Justice *701 Stewart and Mr. Justice Marshall joined, dissenting in Paris Adult Theatre I v. Slaton, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973), stated: "Although we have assumed that obscenity does exist and that we `know it when [we] see it,' Jacobellis v. Ohio, [378 U.S. 184] at 197 [84 S.Ct. 1676], 12 L.Ed.2d 793 (Stewart, J., concurring), we are manifestly unable to describe it in advance except by reference to concepts so elusive that they fail to distinguish clearly between protected and unprotected speech." 413 U.S. at 84, 93 S.Ct. at 2648, 37 L.Ed.2d at 473.
Despite the ring of truth in Justice Brennan's words, we are duty bound to follow the majority statements of our nation's highest court in assessing the attack upon our state obscenity statute which the defendant seeks to mount on federal constitutional principles. In Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), the Court held that obscenity, although expression, falls outside the area of speech or press constitutionally protected under the First and Fourteenth Amendments against state or federal infringement.[1] Although the attempt to define obscenity has "produced a variety of views among the members of the Court unmatched in any other course of constitutional adjudication," Interstate Circuit, Inc. v. Dallas, 390 U.S. 676, 704-705, 88 S.Ct. 1298, 1314, 20 L.Ed.2d 225, 244 (1968) (Harlan, J., separate opinion), the Court has consistently recognized that the states have a legitimate interest in prohibiting dissemination or exhibition of obscene material. E. g., Memoirs v. Massachusetts, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966); Redrup v. New York, 386 U.S. 767, 87 S.Ct. 1414, 18 L.Ed.2d 515 (1967); Kois v. Wisconsin, 408 U.S. 229, 92 S.Ct. 2245, 33 L.Ed.2d 312 (1972).
The currently prevailing definition of obscenity was announced by a new majority of the high court in Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). As we read the opinion, obscenity is a work or material which, (a) taken as a whole, the average person, applying contemporary community standards, would find appeals to the prurient interest; and (b) depicts or describes, in a patently offensive way, sexual conduct specifically defined by applicable state law; and (c) taken as a whole, lacks serious literary, artistic, political, or scientific value.[2] In order to provide the states further guidance the Court gave a few plain examples of what a state statute could define for regulation under part (b) of the definition, viz., representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated; and representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals.[3]

*702 Vagueness

The district judge found that the legislature's use of the terms "contemporary community standards" and "patently offensive way" in defining obscenity, renders the Louisiana obscenity statute unconstitutionally vague. Yet, these are precisely the words used in the Miller definition, which Chief Justice Burger, writing for the Court, described as "specific requisites [which] will provide fair notice to a dealer in such materials that his public and commercial activities may bring prosecution." 413 U.S. at 27, 93 S.Ct. at 2616-17, 37 L.Ed.2d at 432-33. Therefore, we conclude the obscenity statute cannot be considered to be in violation of federal constitutional principles because of the legislature's use of these terms.
On appeal defendant argues that the statute is vague not merely because of these terms, but also due to the absence of any definition of "community standards" in that portion of the statute which requires the trier of fact to determine whether "the average person applying contemporary community standards would find that the conduct, taken as a whole, appeals to the prurient interest." The district judge did not elaborate upon this issue; however, we find that defendant's argument in this regard is without merit. Again, the language of the Louisiana statute tracks very closely that set forth and approved in the Miller opinion. Furthermore, in Miller and the cases following it the United States Supreme Court has made it clear that a state may choose to define an obscenity offense in terms of "contemporary community standards" without further specification, as Louisiana has done, thus permitting juries to rely on the understanding of the community from which they come as to contemporary community standards; or a state may choose to define the standards in more precise geographic terms, as has been done in other jurisdictions.
In Jenkins v. Georgia, 418 U.S. 153, 94 S.Ct. 2750, 41 L.Ed.2d 642 (1974), a decision rendered by the Supreme Court a year after the Miller case, the Court commented:
"We agree with the Supreme Court of Georgia's implicit ruling that the Constitution does not require that juries be instructed in state obscenity cases to apply the standards of a hypothetical statewide community. Miller approved the use of such instructions; it did not mandate their use. What Miller makes clear is that state juries need not be instructed to apply `national standards.' We also agree with the Supreme Court of Georgia's implicit approval of the trial court's instructions directing jurors to apply `community standards' without specifying what `community.' Miller held that it was constitutionally permissible to permit juries to rely on the understanding of the community from which they came as to contemporary community standards, and the States have considerable latitude in framing statutes under this element of the Miller decision. A State may choose to define an obscenity offense in terms of `contemporary community standards' as defined in Miller without further specification, as was done here, or it may choose to define the standards in more precise geographic terms, as was done by California in Miller." 418 U.S. at 157, 94 S.Ct. at 2753, 41 L.Ed.2d at 648.
The high Court, in Hamling v. United States, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed. 2d 590 (1974), further elaborated on the Miller requirement that the trier of fact ascertain whether an "average person applying contemporary community standards" would find that the work or material, considered as a whole, appeals to prurient interest. The Court stated:
"The result of the Miller cases, [Miller v. California, supra; Paris Adult Theatre I v. Slaton, supra; United States v. 12 200-ft. Reels of Film, 413 U.S. 123, 93 S.Ct. 2665, 37 L.Ed.2d 500 (1972)], . . as a matter of constitutional law . . is to permit a juror sitting in obscenity cases to draw on knowledge of the community or vicinage from which he comes in deciding what conclusion `the average *703 person, applying contemporary community standards' would reach in a given case. * * *" 418 U.S. at 105, 94 S.Ct. at 2901, 41 L.Ed.2d at 613.
In view of the position taken by the United States Supreme Court in these cases, we conclude that La.R.S. 14:106(A)(2) is not unconstitutionally vague because the legislature has called upon the collective wisdom of the jury to determine whether certain specifically defined hard core sexual conduct is presented in a patently offensive manner, appeals to prurient interest, and lacks serious independent value.[4]

Overbreadth
In addition to finding the statute unconstitutionally vague, the district judge concluded that its provisions specifically defining the representations or descriptions of sexual conduct subject to proscription, as required by the Miller decision, are overbroad, because they exceed the "few plain examples of what a state statute could define for regulation" given by the Supreme Court. In his opinion, the district judge, citing La.R.S. 14:106(A)(2)(d), reasoned that because the statute subjects to possible prohibition as obscenity works or materials which portray conduct involving the "female breast nipple," which was not mentioned in Miller, it encroaches upon constitutionally protected free expression. If he is correct, then many of the other specific definitions of sexual conduct are overbroad, because the legislature has in several instances defined as punishable the portrayal of sexually oriented matter by reference to parts of the human anatomy which were not mentioned in the "few plain examples" given by the high court in Miller.
However, in Jenkins v. Georgia, supra, the Supreme Court made it clear that the "plain examples" given in Miller are "not exhaustive," and that other representations or descriptions of sexual conduct, if "sufficiently similar," could likewise be regulated by the states under the Miller formula for determining whether a material or work is obscene.
After carefully examining the representations or descriptions of sexual conduct specifically defined by the legislature in La.R.S. 14:106(A)(2)(a)-(e), we find them sufficiently similar to the plain examples given by the Supreme Court in Miller to fall within the limits of permissible state regulation. It must be borne in mind that representations or descriptions fitting these definitions, standing alone, do not amount to obscenity or unprotected speech. Additionally, the trier of fact must find that the work or material within which the representations or descriptions are contained, taken as a whole, would be found by the average person applying contemporary community standards to appeal to the prurient interest; and that the work or material depicts or describes the defined sexual conduct in a patently offensive way; and that the work or material, taken as a whole, lacks serious literary, artistic, political, or scientific value.[5] Furthermore, under the *704 Louisiana statute it must be found that the defined sexual conduct was publicly portrayed, for its own sake, and for ensuing commercial gain.[6] Within this context, we do not find that the representations or descriptions of sexual conduct defined by the Louisiana obscenity statute cause the statute to exceed the Miller guidelines or to encroach upon constitutionally protected speech or expression.
We emphasize, however, lest it be lost sight of, that "sex and obscenity are not synonymous," Roth v. United States, 354 U.S. at 487, 77 S.Ct. at 1310, 1 L.Ed.2d at 1508, and that matter which is sexually oriented but not obscene is fully protected by the constitution. Furthermore, as the district judge aptly noted, "nudity alone is not enough to make material legally obscene under the Miller standards." Jenkins v. Georgia, 418 U.S. at 161, 94 S.Ct. at 2755, 41 L.Ed.2d at 650. It is only when the sexually oriented matter fulfills all of the requirements of the definition of obscenity set forth in the Miller decision that it may be proscribed by law.
In our opinion the legislature, in enacting the provisions contained in La.R.S. 14:106(A)(2) conscientiously and successfully followed the Miller guidelines. Accordingly, we conclude that this part of the statute is neither vague nor overbroad, and that the district judge fell into error in quashing the bill of information based thereon.
For the reasons assigned, the judgment of the district court is reversed, and the case is remanded for further proceedings.
DIXON, J., dissents with reasons.
DIXON, Justice (dissenting).
I respectfully dissent.
Under Louisiana law, a criminal statute must inform the citizen of the acts for which he can be convicted and sentenced. Although the federal system permits it, our system of criminal law will not permit the *705 jury or the trial judge to fix the "community standard" which the offensive conduct might have violated. "Serious literary, artistic, political or scientific value" is not an acceptable standard by which to measure criminal conduct in Louisiana. And the United States Supreme Court to the contrary notwithstanding, appellate judges in Louisiana do not have the "ultimate power. . . to conduct an independent review" of the facts of a defendant's guilt or innocence.
NOTES
[1] The Court's majority continues to subscribe to the view that obscenity is not protected by the First Amendment, and may be regulated by the states. Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973); Paris Adult Theatre I v. Slaton, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973); Kois v. Wisconsin, 408 U.S. 229, 92 S.Ct. 2245, 33 L.Ed.2d 312 (1972); United States v. Reidel, 402 U.S. 351, 91 S.Ct. 1410, 28 L.Ed.2d 813 (1971).
[2] "* * * State statutes designed to regulate obscene materials must be carefully limited. * * * As a result, we now confine the permissible scope of such regulation to works which depict or describe sexual conduct. That conduct must be specifically defined by the applicable state law, as written or authoritatively construed. A state offense must also be limited to works which, taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole, do not have serious literary, artistic, political, or scientific value.

"The basic guidelines for the trier of fact must be: (a) whether `the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest. * * * (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. * * *" Miller v. California, 413 U.S. at 23-24, 93 S.Ct. at 2615, 37 L.Ed.2d at 430-31. (Footnote and citations omitted.)
[3] "(a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.

"(b) Patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals." 413 U.S. at 25, 93 S.Ct. at 2615, 37 L.Ed.2d at 431.
[4] Defendant argued before this Court and, according to his brief, before the district court, that La.R.S. 14:106 is unconstitutional in its entirety because paragraph C, which provides a limited immunity from conviction for theatre and bookstore employees, contains an obvious typographical or clerical error, the word "obscure" appearing where "obscene" was clearly intended. Defendant contends the presence of this error renders the statute confusing and vague to persons of common intelligence, and thus constitutionally defective. Today in State v. Johnson, consolidated with State v. Hensley, 343 So.2d 705 (La.1977), docket numbers 58,495 and 58,496, we held that although the portion of La.R.S. 14:106(C) containing the defect complained of was unconstitutional because it created an arbitrary and unreasonable distinction between two classes of theatre and bookstore clerical employees, in violation of the equal protection provisions of state and federal constitutions, the last clause of paragraph C was separable from the remainder of the statute. For this reason we reserve judgment, as we did in Johnson and Hensley, on the effect of the typographical error in the statute.
[5] Whether material appeals to the "prurient interest," is "patently offensive," and without serious value are, of course, questions for the jury. However, juries do not have unbridled discretion in determining these issues because while these are questions of fact, they are also questions of constitutional law determinative of the ambit of protection to be afforded freedom of expression. Accordingly, the First and Fourteenth Amendments require that such questions be subject to the ultimate power of state appellate courts to conduct an independent review of constitutional claims when necessary. In Jenkins v. Georgia, 418 U.S. 153, 94 S.Ct. 2750, 41 L.Ed.2d 642 (1974) the United States Supreme Court expressly rejected the contention that a jury's determination of guilt precludes appellate review of claims that the depictions or materials are protected by the First and Fourteenth Amendments. The Court reasoned:

"* * * Even though questions of appeal to the `prurient interest' or of patent offensiveness are `essentially questions of fact,' it would be a serious misreading of Miller to conclude that juries have unbridled discretion in determining what is `patently offensive.' Not only did we there say that `the First Amendment values applicable to the States through the Fourteenth Amendment are adequately protected by the ultimate power of appellate courts to conduct an independent review of constitutional claims when necessary,' 413 U.S., at 25, 93 S.Ct., at 2615 [37 L.Ed.2d 419], but we made it plain that under that holding no one will be subject to prosecution for the sale or exposure of obscene materials unless these materials depict or describe patently offensive "hard core" sexual conduct . . ..' Id., at 27, 93 S.Ct., at 2616 [37 L.Ed.2d 419].
"We also took pains in Miller to `give a few plain examples of what a state statute could define for regulation under part (b) of the standard announced,' that is, the requirement of patent offensiveness. Id., at 25, 93 S.Ct., at 2615 [37 L.Ed.2d 419]. These examples included `representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated,' and `representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals.' Ibid. While this did not purport to be an exhaustive catalog of what juries might find patently offensive, it was certainly intended to fix substantive constitutional limitations, deriving from the First Amendment, on the type of material subject to such a determination. It would be wholly at odds with this aspect of Miller to uphold an obscenity conviction based upon a defendant's depiction of a woman with a bare midriff, even though a properly charged jury unanimously agreed on a verdict of guilty." 418 U.S. at 160-61, 94 S.Ct. at 2755, 41 L.Ed.2d at 650.
[6] The Miller court, after setting forth its three part definition of obscenity, suggested later in the opinion that this factor is also an essential element:

"* * * `The protection given speech and press was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people.' * * * But the public portrayal of hard-core sexual conduct for its own sake, and for the ensuing commercial gain, is a different matter." 413 U.S. at 34, 93 S.Ct. at 2620-21, 37 L.Ed.2d at 437.