343 So.2d 705 (1977)
STATE of Louisiana
v.
Stephen W. JOHNSON.
STATE of Louisiana
v.
Kenneth V. HENSLEY.
Nos. 58495 and 58496.
Supreme Court of Louisiana.
February 28, 1977.
*706 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise S. Korns, Asst. Dist. Atty., for plaintiff-appellant.
Jacques F. Bezou, Michael Silvers, New Orleans, for defendant-appellee.
DENNIS, Justice.
By separate and unrelated bills of information, the defendants in these consolidated appeals were charged with having violated La.R.S. 14:106, the Louisiana obscenity statute. Both defendants filed motions to quash the informations alleging the unconstitutionality of the obscenity statute, and the district judge sustained both motions. The State, in each case, has appealed.
After careful review of the judgments of the district court and of the arguments raised by appellees and upon full consideration of the limitations placed on government regulation of allegedly obscene materials by the United States Constitution, we are convinced that the judge below erred in ruling that La.R.S. 14:106 is unconstitutional in its entirety. For the reasons hereinafter set forth, we reverse the rulings of the lower court.
Stephen W. Johnson, docket number 58,495, was charged with having willfully and unlawfully participated or engaged in the exhibition and display of hard core sexual conduct in two untitled motion picture films; Kenneth V. Hensley, docket number 58,496, was charged with five counts of obscenity for having willfully possessed,[1] *707 exhibited, and displayed obscene, lewd, lascivious, filthy and sexually indecent hard core sexual conduct in five different magazines. In both cases the district judge found that La.R.S. 14:106(C), a section of the obscenity statute which creates a limited immunity from conviction for theatre and bookstore employees acting within the course and scope of a bona fide contract of employment, was unconstitutionally vague.
La.R.S. 14:106(C) as approved and enrolled by the legislature provides:
"No theatre employee or bookstore employee acting within the course and scope of a bona fide contract of employment wherein such employee is employed by any person, firm or corporation exhibiting motion pictures or selling books, periodicals or other published materials pursuant to a license or permit to exhibit or sell the same issued by the State of Louisiana or any municipality, parish or consolidated city-parish government therein, shall be guilty of a violation of this section as a result of his possession, exhibition or sale within the course and scope of such employment provided such employee has no managerial duties and has no financial interest in the possession, exhibition or sale of any materials other than wages from his said employment, unless there is no person having managerial duties or a financial interest in the possession, exhibition or sale of obscure materials subject to immediate arrest and prosecution." (Emphasis supplied.)
Appellees argued, and the district court agreed, that the presence of the word "obscure" in this paragraph of the statute rendered the entire obscenity statute unconstitutionally vague, because a person of average intelligence, untrained in the law, could not, on reading the statute, determine the applicability of paragraph C, and thus could not ascertain whether contemplated conduct might subject him to criminal prosecution.

Theatre and Bookstore Employees
We reserve judgment on whether the district judge was correct in this ruling, because defendants on appeal have called our attention to a more serious flaw in paragraph C of the statute. The last clause of paragraph C, in effect, subjects to criminal responsibility non-managerial, non-proprietary theatre and bookstore employees if there is no person having managerial duties or a financial interest in the business "subject to immediate arrest and prosecution." Thus the meaning of this clause is of crucial importance to a small class of potential defendants in obscenity prosecutions.
Appellees argue that this clause is ambiguous and does not give fair notice of the circumstances under which a bookstore or theatre employee, having no managerial duties or financial interest in the business, may be penalized for exhibiting or selling obscene materials. They point out that to immunize the clerical employee the statute does not specify where the managerial or financially interested superior must be in order to be "subject to immediate arrest and prosecution": on the premises, within the parish, within the judicial district, or merely within the State? Additionally, we find the paragraph unclear because it does not say when this person must be "subject to immediate arrest" in order to insulate the clerical employee from criminal liability. It could refer to the time at which the police first detect a violation of the statute at the premises, to the entire period during which the police have knowledge of violations there, to the time of the pre-arrest hearing if one is required by paragraph F(1) of the statute, to any time the police propose to make an arrest as a result of a violation on the premises, or to any time prior to the actual conviction of the clerical employee for obscenity.
We are asked to invoke the precepts of our recent decision in Connick v. Lucky Pierre's, 331 So.2d 431 (La.1976) and find that the statute "fails to fulfill the due process requirement that statutes be sufficiently definite to give notice as to what conduct is necessary to avoid legal sanctions." However, La.R.S. 13:4711 et seq., the statute we declared unconstitutional in Lucky Pierre's, suffered from a greater degree *708 of vagueness than La.R.S. 14:106(C). La.R.S. 13:4711 et seq. attempted to require owners, lessees, sublessees, employees and those persons acting in concert with them to institute and proceed with "legal action necessary to enjoin" any acts of prostitution, assignation or obscenity which they knew were taking place in a building over which they had control or in which they were employed. As pointed out in our opinion in that case, the possible interpretations of the phrase, "legal action necessary to enjoin," as well as the persons against whom the actions should be taken, were multitudinous, and the vagueness struck at the very heart of the legislation so as to render it impossible to determine the acts or omissions which the legislature sought to prohibit. See, Connick v. Lucky Pierre's, supra.
The issue here is distinguishable because the obscenity statute is sufficiently definite to give notice as to what conduct is necessary to avoid legal sanctions. See, State v. Amato, 343 So.2d 698 (La.1977), decided this day. The uncertainty with which we are now dealing is crucial only to determining which non-managerial, non-proprietary bookstore and theatre employees are to be subjected to criminal sanctions because of the absence of someone having a financial or executive interest in the business. Because the ambiguity affects a subsidiary portion of the statute, it would perhaps be permissible to save the provision by construing it as strictly as possible in favor of defendants.
However, under any saving construction of the words "subject to immediate arrest and prosecution," some clerical bookstore and theatre employees would be subjected to criminal proceedings whereas others would not, depending on whether their superiors are subject to immediate arrest and prosecution. Thus the law does not afford all such employees equal treatment, and raises a question as to whether the distinction between the two classes of clerical employees has been drawn upon a reasonable basis. We do not think that it has. To make a person's exposure to a possible fine of $2,000 and possible imprisonment at hard labor for five years completely dependent upon whether another person is subject to immediate arrest and prosecution seems to us entirely unfair and unreasonable. Accordingly, we conclude that the last clause of La.R.S. 14:106(C) is unconstitutional because it denies equal protection of the law to one class of clerical bookstore and theatre employees. U.S.Const. amend. XIV, § 1; La.Const. art. 1, § 3 (1974).
Nevertheless, we do not agree with the defendants-appellees that a judicial determination of partial invalidity of the statute in this respect so disembowels the legislation that it must fall as a whole. Instead, we conclude that the repugnant provision is separable from the remainder of the statute, which it is therefore our duty to uphold.
The obscenity statute was enacted by Act No. 274 of the 1974 regular session of the legislature, and included the following severability clause:
"If any provision or item of this Act or the application thereof is held invalid, such invalidity shall not affect other provisions, items or applications of this Act which can be given effect without the invalid provisions, items or applications, and to this end the provisions of this Act are hereby declared severable."
Since the balance of the statute can be given effect without the invalid provision, the requirements of the severability clause have been met. Notwithstanding this, there are well recognized precepts of statutory construction which also must be considered.
"To be capable of separate enforcement, the valid portion of an enactment must be independent of the invalid portion and must form a complete act within itself. The law enforced after separation must be reasonable in light of the act as originally drafted. The test is whether or not the legislature would have passed the statute had it been presented with the invalid features removed." 2 Sutherland, Statutes *709 and Statutory Construction, § 44.04 at 341-42 (Sands 4th ed. 1973) (footnotes omitted).
"A further inquiry which courts make in determining legislative intent in regard to the separability of statutes is into the dominant or main purpose of the enactment. Where the purpose of the statute is defeated by the invalidity of part of the act, the entire act is void. Conversely, when the general object of the act can be achieved without the invalid part, the act will be upheld." Id. § 44.07 at 347 (footnotes omitted).
It is well recognized among the legal community of the State that Act 274 of 1974 was designed to fill the void created by our decisions in State v. Shreveport News Agency, Inc., 287 So.2d 464 (La.1974) and State v. McNutt, 287 So.2d 478 (La.1974), which invalidated the state statutory regulation of obscenity, as was militated by the decision of the United States Supreme Court in Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). See, Highlights of the 1974 Regular SessionObscenity Regulation, 35 La.L.Rev. 601 (1975). The title of the 1974 act declares that its purpose was "to define the crime of obscenity, to provide penalties therefor, to provide for the applicability and construction of the Act, and to provide otherwise with respect thereto." The language of the act itself indicates that the dominant or main purpose of the legislation was to adopt the Miller definition of obscenity and to state specifically the kinds of representations or descriptions of sexual conduct which could be found to constitute obscenity as is also required by the Miller decision. See, State v. Amato, supra.
Clearly the main purpose of the obscenity statute will not be defeated by the invalidity of the last clause of paragraph C. The only effect will be to grant immunity from conviction to all theatre and bookstore employees having no managerial duties and no financial interest, other than wages, in the dissemination of obscene materials, rather than exposing some of these employees to criminal sanctions simply because no person having managerial duties or a financial interest in the materials is subject to immediate arrest and prosecution. Without the repugnant clause the statute forms a complete act within itself, and is reasonable in light of the act as originally drafted. Because the main goal of the legislature was to provide the state a valid and enforceable obscenity statute, and since it has previously granted unqualified immunity to nonmanagerial theatre employees, see La.Acts numbers 605 and 743 of 1972, we conclude the legislature would have passed the statute had it been presented with the last clause of paragraph C removed. Accordingly, we hold that although the provision is unconstitutional, it is severable from the remainder of paragraph C and the other paragraphs of La.R.S. 14:106.

Violent Materials
Appellees next contend that La.R.S. 14:106 is unconstitutionally overbroad because it purports to regulate purely violent materials. La.R.S. 14:106(A)(6) provides:
"The crime of obscenity is the intentional:
"* * *
"Advertisement, exhibition or display of violent material. `Violent material' is any tangible work or thing which the trier of facts determines depicts actual or simulated patently offensive acts of violence, including but not limited to, acts depicting sadistic conduct, whippings, beatings, torture and mutilation of the human body."
In Miller v. California, supra, the United States Supreme Court declared
"* * * State statutes designed to regulate obscene materials must be carefully limited. * * * As a result, we now confine the permissible scope of such regulation to works which depict or describe sexual conduct. That conduct must be specifically defined by the applicable state law, as written or authoritatively construed. A state offense must also be limited to works which, taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a *710 patently offensive way, and which, taken as a whole, do not have serious literary, artistic, political, or scientific value." 413 U.S. at 23-24, 93 S.Ct. at 2614-15, 37 L.Ed.2d at 430-31 (emphasis supplied).
Unquestionably, La.R.S. 14:106(A)(6), which facially purports to proscribe patently offensive violent materials, exceeds the limits placed upon the regulation of obscene materials by the United States Supreme Court in Miller.
Appellees, however, were not charged with dissemination of violent materials. Each was charged with exhibiting and displaying hard core sexual materialsconduct condemned by La.R.S. 14:106(A)(2) and (3).[2] Furthermore, for the reasons stated above pertaining to the last clause of La.R.S. 14:106(C), the severability clause of the act would also allow paragraph (A)(6) to be eliminated from the statute. Assuming the invalidity of La.R.S. 14:106(A)(6), we see no reason to declare the entire statute invalid.

Pre-arrest Hearing
Johnson and Hensley also contend that the obscenity statute is totally invalid because La.R.S. 14:106(F)(1) provides for a pre-arrest adversary hearing and judicial determination of obscenity, except in cases involving:
"* * * motion pictures, printed materials and photographic materials showing actual ultimate sexual acts or simulated or animated ultimate sexual acts when there is an explicit, close-up depiction of human genital organs so as to give the appearance of the consummation of ultimate sexual acts. * * *"
However, a pre-arrest hearing, as opposed to a pre-seizure hearing, is not constitutionally compelled in any instance. Milky Way Productions, Inc. v. Leary, 305 F.Supp. 288 (S.D.N.Y.1969), aff'd per curiam sub nom., New York Feed Co. v. Leary, 397 U.S. 98, 90 S.Ct. 817, 25 L.Ed.2d 78 (1970); see, Highlights of the 1974 Regular Session *711 Obscenity Regulation, 35 La.L.Rev. 601, 605 (1975). In the instant case the appellees do not complain in motion or in argument about the nature of their arrests. We are not prepared to state categorically that no constitutional problems could be presented by the statutory exception for arrest without a hearing when the offense charged is depiction of ultimate sex acts. Nevertheless, within the context of the present case we see no constitutional or statutory frailty in the provision.
For the reasons assigned, the judgments of the district court sustaining the appellees' motions to quash the informations in the cases of State v. Johnson, docket number 58,495, and State v. Hensley, docket number 58,496, are reversed and set aside, and the cases are remanded for further proceedings.
MARCUS, J., concurs.
SANDERS, C. J., concurs in the decree.
NOTES
[1] We note that the bill of information included in the record for our review purports to charge the defendant-appellee with possession of obscene materials, as well as thier dissemination. La.R.S. 14:106 does not make mere possession of obscene materials unlawful. The information otherwise charges the defendantappellee with exhibiting and displaying hard core sexual conduct, activities clearly within the prohibition of La.R.S. 14:106(A)(2). The unnecessary allegation may be disregarded as surplusage. La.C.Cr.P. art. 486.
[2] La.R.S. 14:106(A)(2) and (3) provides:

"The crime of obscenity is the intentional:
"* * *
"(2) Participation or engagement in, or management, production, presentation, performance, promotion, exhibition, advertisement, sponsorship or display of, hard core sexual conduct when the trier of fact determines that the average person applying contemporary community standards would find that the conduct, taken as a whole, appeals to the prurient interest; and the hard core sexual conduct, as specifically defined herein, is presented in a patently offensive way; and the conduct taken as a whole lacks serious literary, artistic, political or scientific value.
"Hard core sexual conduct is the public portrayal, for its own sake, and for ensuing commercial gain of:
"(a) Ultimate sexual acts, normal or perverted, actual, simulated or animated, whether between human beings, animals or an animal and a human being; or
"(b) Masturbation, excretory functions or lewd exhibition, actual, simulated or animated, of the genitals, pubic hair, anus, vulva or female breast nipples; or
"(c) Sadomasochistic abuse, meaning actual, simulated or animated, flagellation or torture by or upon a person who is nude or clad in undergarments or in a costume which reveals the pubic hair, anus, vulva, genitals or female breast nipples, or the condition of being fettered, bound or otherwise physically restrained, on the part of one so clothed; or
"(d) Actual, simulated or animated, touching, caressing or fondling of, or other similar physical contact with, a pubic area, anus, female breast nipple, covered or exposed, whether alone or between humans, animals or a human and an animal, of the same or opposite sex, in an act of apparent sexual stimulation or gratification; or
"(e) Actual, simulated or animated stimulation of a human genital organ by any device whether or not the device is designed, manufactured and marketed for such purpose.
"(3) Sale, allocation, consignment, distribution, dissemination, advertisement, exhibition or display of obscene material, or the preparation, manufacture, publication or printing of obscene material for sale, allocation, consignment, distribution, advertisement, exhibition or display of obscene material, or the preparation, manufacture, publication or printing of obscene material for sale, allocation, consignment, distribution, advertisement, exhibition or display.
"Obscene material is any tangible work or thing which the trier of fact determines (a) that the average person applying contemporary community standards would find, taken as a whole, appeals to the prurient interest; and, (b) depicts or describes in a patently offensive way, hard core sexual conduct specifically defined in Paragraph (2) above; and (c) the work or thing taken as a whole lacks serious literary, artistic, political or scientific value."