BECKER, Judge.
The defendants, Kenneth and Bryan Le-det and Russland Enterprises, Inc. were each charged by bill of information with sixteen counts of obscenity. The Ledet brothers and Russland Enterprises Inc. were arraigned and pled not guilty. After a judge trial on count sixteen only, Russ-land Enterprises Inc. was found guilty as charged. The court took the case under advisement as to the Ledets. Russland filed a Motion for a New Trial and for a Post Verdict Judgment of Acquittal. On August 14, 1987, the trial court found the Ledets guilty as charged. The Judge denied Russland’s motions, and fined Russ-land $1,500.00. Russland moved for appeal. On September 21, 1987, the Ledets filed Motions for Post Verdict Judgment of Acquittal and/or New Trial. The court denied the motions, and all three defendants pled guilty as charged as to .the other fifteen counts. The court sentenced Kenneth and Bryan Ledet, each, to two years at hard labor on each count, suspended, and ordered that the sentences were to run concurrently. Each was placed on two years inactive probation, ordered to pay court costs and fined $1,000.00. The court fined Russland Enterprises Inc. $2,500.00. All three defendants filed motions for appeal.
Officer Timothy Bayard, NOPD, testified on January 15, 1987 at 4:45 p.m., he entered the “S-E-X” bookstore, 425 Bourbon, with Officer James Stewart. Joyce Biene-my was behind the cashier’s counter. Ba-yard purchased tokens from Bienemy, walked to the second floor and inserted the tokens into a booth where he watched a “peep show” entitled “The Punishment.” He made notes on the film. While in the store, he saw a glass case containing novelties and magazines along the walls. An occupational license on the wall was issued to Russland Enterprises Inc. He left the store and prepared an application for a search warrant. Bayard obtained the warrant which was executed and the defendants were subsequently arrested.
The defense stipulated that the store sells adult materials, that “The Punishment” was shown in the booth, that the movie was seized and that Bryan and Kenneth Ledet owned the business.
The judge then viewed the movie, and the State rested. Kenneth Ledet testified he owns Russland Enterprises with his brother, and that he is an officer in the corporation. He said he once complained to Bayard that an adult bookstore on Decatur Street was selling “hard core material” *356 and he felt that if a competitor sold the material, he should be allowed to also.
He testified that Bienemy was the cashier, and that Russell Freeland was the general manager of the corporation. As general manager, Freeland had “complete operation of the store” including keeping it stocked, keeping the movies repaired and running, and the hiring and firing of employees. Ledet said he had “no authority to determine what was to be on the premises.” He. stated it was the store’s policy to sell “soft core ... and not cross the boundaries to hard core,” and that after the arrest, Freeland was fired.
On cross examination, Kenneth Ledet testified that he goes into the store once a month. He admitted purchasing “The Punishment” but said he purchased films in bulk. He said he had not seen the title and had not seen the film.
The defense argues that the trial court erred by ruling that contemporary community standards do not apply to L.S.A.-R.S. 14:106(A)(6), the subsection under which the defendants were prosecuted, and that the State failed to introduce sufficient evidence to support a finding of scienter or guilty knowledge on the part of the defendants.
Because we find that the statute under which the defendants were prosecuted is unconstitutional, we deem it unnecessary to address the second assignment of error.
At issue is whether L.S.A.-R.S. 14:106(A)(6), in an attempt to prohibit the advertisement, exhibition or display of sexually violent material, meets the criteria set forth by the United States Supreme Court to regulate obscene material. We think it does not.
The Louisiana Supreme Court in State v. Johnson, 343 So.2d 705 (La.1977), found that LA.-R.S. 14:106(A)(6) was unconstitutionally overbroad because it purported to regulate purely violent materials. R.S. 14:106(A)(6) then provided:
“Advertisement, exhibition or display of violent material. ‘Violent material’ is any tangible work or thing which the trier of facts determines depicts actual or simulated patently offensive acts of violence, including but not limited to, acts depicting sadistic conduct, whippings, beatings, torture and mutilation of the human body.”
The Court stated:
In Miller v. California, supra, [413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973)], the United States Supreme Court declared
“ * * * State statutes designed to regulate obscene materials must be carefully limited. * * * As a result, we now confine the permissible scope of such regulation to works which depict or describe sexual conduct. That conduct must be specifically defined by the applicable state law, as written or authoritatively construed. A state offense must also be limited to works which, taken as a whole appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole, do not have serious literary, artistic, political, or scientific value.” 413 U.S. at 23-24, 93 S.Ct. at 2614-15, 37 L.Ed.2d at 430-31 (emphasis supplied). Unquestionably, La.R.S. 14:106(A)(6), which facially purports to proscribe patently offensive violent materials, exceeds the limits placed upon the regulation of obscene materials by the United States Supreme Court in Miller. Id. at 709-710.
In response to Johnson, the Louisiana Legislature by Acts 1977, No. 717 amended the subsection to read:
(6) Advertisement, exhibition, or display of sexually violent material. “Violent material” is any tangible work or thing which the trier of facts determines depicts actual or simulated patently offensive acts of violence, including but not limited to, acts depicting sadistic conduct, whippings, beatings, torture, and muti-laion of the human body, as described in Sub-Subparagraph (b)(iii) of Parar graph (2) of Subsection A herein. (Emphasis added).
R.S. 14:106(A)(2)(b)(iii) provides:
(b) Hard core sexual conduct is the public portrayal, for its own sake, and for ensuing commercial gain of:
*357 (iii) Sadomasochistic abuse, meaning actual, simulated or animated, flagellation, or torture by or upon a person who is nude or clad in undergarments or in a costume that reveals the pubic hair, anus, vulva, genitals, or female breast nipples, or in the condition of being fettered, bound or otherwise physically restrained, on the part of one so clothed; or
Accordingly, it appears that La.R.S. 14:106(A)(6) does not require that obscenity be defined by “contemporary community standards”. , That term is included in R.S. 14:106(A)(2)(a)[1] but is not included in R.S. 14:106(A)(2)(b).
The United States Supreme Court in Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), while reviewing the constitutionality of New York’s and California’s obscenity statutes, said that obscenity is to be defined by community standards. This standard is necessary for a statute to withstand attacks of constitutional infirmity based on vagueness and overbreadth. Without this standard, due process is violated because the statute fails to give adequate notice of what is prohibited, and the right to free speech may be violated by convictions based upon protected material. U.S.C. Amends. 1, 5, 14.
The currently prevailing definition of obscenity was announced by the U.S. Supreme Court in Miller v. California, 413 U.S. 15, 25, 93 S.Ct. 2607, 2615, 37 L.Ed.2d 419 (1973):
The basic guidelines for the trier of fact must be: (a) whether “the average person, applying contemporary community standards ” would find that the work, taken as a whole, appeals to the prurient interest, Kois v. Wisconsin, supra, 408 U.S. [229], at 230, 92 S.Ct. [2245], at 2246 [33 L.Ed.2d 312 (1972)]; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value, (emphasis added)
In Jenkins v. Georgia, 418 U.S. 153, 157, 94 S.Ct. 2750, 2753, 41 L.Ed.2d 642 (1974), the U.S. Supreme Court stated:
“A State may choose to define an obscenity offense in terms of ‘contemporary community standards’ as defined in Miller without further specification, as was done here, or it may choose to define the standards in more precise geographic terms, as was done in California in Miller.”
Thus, although a state may use more precise terms than contemporary community standards, those terms set forth the constitutional minimum.
In State v. Amato, 343 So.2d 698, 702 (La.1977), the Louisiana Supreme Court tracked the language of the U.S. Supreme Court in Hamling v. United States, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974), holding that the result of Miller and its progeny as a matter of constitutional law:
... is to permit a juror sitting in obscenity cases to draw on knowledge of the community or vicinage from which he comes in deciding what conclusion ‘the average person applying contemporary community standards’ would reach in a given case. Hamling, 418 U.S. at 105, 94 S.Ct. at 2901.
Thus, under both the federal and state constitutions, obscenity must be defined by “contemporary community standards” in order to withstand attacks of constitutional infirmity. La.R.S. 14:106(A)(6) does not include those terms in its definition of obscenity, and must be stricken as violative of the First Amend *358 ment right to free speech and due process. Although the trial court found that the material was in fact obscene applying contemporary community standards, that finding is irrelevant since the defendants were prosecuted under a statute that did not require the application of that standard.
Accordingly, the convictions obtained under La.R.S. 14:106(A)(6) are reversed.
REVERSED AND RENDERED.

. (2)(a) Participation or engagement in, or management, operation, production, presentation, performance, promotion, exhibition, advertisement, sponsorship, or display of, hard core sexual conduct when the trier of fact determines that the average person applying contemporary community standards would find that the conduct, taken as a whole, appeals to the prurient interest; and the hard core sexual conduct, as specifically defined herein, is presented in a patently offensive way; and the conduct taken as a whole lacks serious literary, artistic, political, or scientific value.