Dear Senator Malone,
Your request for an Attorney General's opinion has been forwarded to me for research and reply. In particular, you ask the following question:
 What is the legal interpretation of the language, "15 years after the date of the completion of his original sentence," found in S.B. 321.
Senate Bill 321, if ratified by the citizens of Louisiana during a vote on October 3, 1998, would permit convicted felons, who have not been pardoned and not presently incarcerated, to seek public office, "if the date of his qualifying for such office is more than 15 years after the date of the completion of his original sentence". S.B. 321 (C). The question addressed in this opinion concerns the date upon which calculation of the 15 year term will commence.
The sentences imposed by trial judges upon defendants who are convicted are frequently altered due to commutation, modification by an appellate court or other lawful reasons. Based on your question, your concerns seem centered around a scenario wherein the sentence imposed by the trial judge is subsequently reduced by a pardon or parole board. Given the language of S.B. 321 it is unclear whether the calculation of the 15 year term would begin at the completion of the reduced sentence or upon completion of the theoretical sentence originally imposed by the trial judge.
Senate Bill 321 has yet to be promulgated and as such the language of this proposed Louisiana constitutional amendment has not been subjected to judicial review. "The Louisiana Supreme Court is the ultimate arbiter of the meaning of state laws."Washington-St. Tammany Electrical Cooperative, Inc. v. La. PublicService Commission, 95-1932 (La. 4/8/96), 671 So.2d 908. However, the untested language of S.B. 321 may be examined using the established rules of statutory interpretation.
The starting point for the interpretation of any statute is the language of the statute itself. Touchard v. Williams,617 So.2d 885 (La. 1993). When the language of a statute is clear and unambiguous, and its application does not lead to absurd consequences, it shall be applied as written and its letter shall not be disregarded in search of the intent of the legislation or under pretext of pursuing its spirit. Hughes v. Carroll TimberCo., 96-0031 (La.App. 1 Cir. 10/1/96), 694 So.2d 331.
For purposes of this opinion, it will be assumed that the words "completion of original sentence" might be deemed by an examining court as ambiguous. This ambiguity would arise because of the difficulty in establishing a specific date that would correspond to the "completion of his original sentence." For instance, execution of the sentence of a given felon might be postponed pending exhaustive appeals. Additionally, the "original sentence" might be vacated by an appellate court as excessive, or, the original sentence might be vacated because the felon is subsequently adjudicated a habitual offender and a new longer sentence imposed. In this latter example, the "original sentence" would actually be shorter than the enhanced sentence. In sum, the ambiguity in the proposed amendment arises from the inability to uniformly establish a specific date on which the fifteen year disqualification period should begin.
Where a statute is ambiguous and susceptible of two constructions, courts will give that construction which best comports with principles of reason, justice and convenience.Louisiana Smoked Products, Inc. v. Savoie's Sausage and FoodProducts, 96-1716 (La. 7/1/97), 696 So.2d 1373. In addition, penal statutes must be strictly construed against the state and in favor of the defendant. State v. Russland Enterprises,555 So.2d 1365 (La. 1990). Given these two axioms of statutory construction, the ambiguity of S.B. 321 should be resolved in favor of the shorter time period of prohibition against holding office. This would mean the calculation of the 15 year period would begin when the felon is no longer in the custody or control of the State. This would be interpreting the statute strictly in favor of the defendant and would best comport with "reason, justice and convenience" as mandated by Louisiana SmokedProducts, supra at 1378.
The date that a felon is released from either incarceration, parole or any other form of custodial supervision by the state is the natural starting point for the calculation of the 15 year period. This release date is a certain and definite point in time which would be a matter of record and easily discovered by local and state officials when determining the eligibility of a particular candidate for office.
Conversely, reading the language of S.B. 321 to require calculation of the 15 year period to begin upon completion of the first sentence given by the trial judge, a sentence which may subsequently be reduced or altered, would create a theoretical reference point that could lead to confusion and uncertainty. This less concrete reading of S.B. 321 would contradict the rules established by both Louisiana Smoke Products, supra and Russland, supra.
In searching for a rule that would promote the uniform application of the proposed amendment, one could look to the Louisiana Habitual Offender law (La. R.S. 15:529.1). This law provides for a ten year "cleansing period" in which prior felonies of the offender are "cleansed" from use to adjudicate the defendant as a habitual offender. The language used for this cleansing period is remarkably similar to the language in S.B. 321. The Habitual Offender law provides that the ten year cleansing period must have accrued, "since the expiration of the maximum sentence or sentences of the previous conviction or convictions." La. R.S. 15:529.1.
In examining this time period calculation language our courts have forged an interpretation of this language that establishes a clearly identifiable date on which to start the ten year period. Interpreting the proper method for calculating the ten year cleansing period the courts have determined:
 [t]he commencement of the cleansing period is from the date of discharge from state supervision, because the discharge can take place earlier than the theoretical date on which the sentence would have terminated due to pardon, commutation or good time credit, or it could take place later because of parole revocation.
 State v. Humphrey, 96-838 (La.App. 5 Cir. 4/29/97), 694 So.2d 1082.
Another guide to the interpretation of S.B. 321 is provided by language of the proposition placed on the ballot and voted on by the electorate. The proposition to be placed on the ballot for S.B. 321 will read:
 To prohibit convicted felons from seeking or holding public office within fifteen years of completion of sentence and to provide for expressed restoration of that right by pardon. (emphasis added).
There is no reference in this proposition to the "original" sentence as provided for in the actual language of the proposed amendment. The language the electorate will actually see and vote on is very susceptible to interpretation given to the Habitual Offender statute.
Accordingly, it is likely that the date on which the accrual of the fifteen year period provided for in S.B. 321 will be interpreted by the courts as beginning on the date the felon is discharged from state supervision, regardless of the "theoretical" date on which the felon's "original" sentence would have been completed.
We hope that this opinion has been helpful and if we can be of further assistance please feel free to contact us.
Sincerely,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: ___________________________ James L. Piker Assistant Attorney General
Date Received:
Date Released:
JAMES L. PIKERASSISTANT ATTORNEY GENERAL