**MINI CINEMA 16 INC. OF FORT DODGE, Plaintiff,**

v.

**Albert HABHAB, Mayor, et al., Defendants.**

Civ. No. 70–C–2046–C.

United States District Court,
N. D. Iowa, C. D.

Dec. 22, 1970.

C. A. Frerichs, Melvin H. Wolf, Waterloo, Iowa, for plaintiff.

Herbert R. Bennett, Donald J. Mitchell, Fort Dodge, Iowa, for defendants.

## MEMORANDUM AND ORDER.

HANSON, District Judge.

This matter came on for hearing upon plaintiff's complaint for injunctive relief. Plaintiff alleges that defendants, under color of state law, have deprived plaintiff of certain rights protected by the United States Constitution.

The basis of this action is defendants' denial to plaintiff of a theater license and a building permit in respect to a so-called "triple X" movie theater. Plaintiff operates these movie theaters in various other Iowa cities. Defendants are city officials of Fort Dodge, Iowa and the City of Fort Dodge itself.

At the commencement of the hearing, it was stipulated by the parties that the matter was to be submitted to the Court on its merits for permanent injunctive relief. During the progress of the hearing, plaintiff withdrew its first cause of action in respect to any deprivation of rights by reason of the denial of the building permit. This voluntary withdrawal was predicated on defendant Kalsow's good faith statements to the effect that the only reason a building permit has not been issued is because certain plans have not been certified by an architect or engineer. Therefore, the sole issue for the Court's decision is whether the defendants have illegally circumscribed plaintiff's constitutional rights in denying the application for a theater license.

Before any discussion as to the jurisdictional basis and the merits of this cause, the Court believes it would be helpful to set out in synopsis form the testimony and other evidentiary material in regard to this matter which was presented at the hearing.

The first witness was Robert Clelland, one of the defendants, who is the City Clerk for Fort Dodge, Iowa. Mr. Clelland produced all the city ordinances with respect to theater permits. He testified that plaintiff submitted an application for a theater license on November 9, 1970 to the city council which was to meet the following day. Mr. Clelland, whose responsibility it is to take the minutes of city council meetings, also produced a certified copy of the minutes of the November 10, 1970 meeting. Mr. Clelland, who was personally present at the meeting, further testified that many people and organizational groups spoke in opposition to the theater. Numerous petitions opposing plaintiff's theater were also submitted at the council meeting and were introduced into evidence. The minutes show that the three members of the city council—Mayor Habhab, and Councilmen Conlon and Gillespie—voted unanimously to deny the license request.

The next witness was Mayor Habhab, a defendant and an attorney, who testified as to his actions in respect to the denial of the theater license. Mayor Habhab testified about the special press conference he held on November 9th, one day prior to the city council meeting, wherein he announced that a so-called "triple X" movie theater would not be permitted in Fort Dodge. The Mayor also testified that he had received many protests from the local citizenry about the proposed theater. Mayor Habhab stated that the only reason for denying the license permit was a feeling on his part and that of the city council that the movies shown would be objectionable as obscene. The Mayor based his opinion that "triple X" movies were obscene on conversations with other mayors and newspaper accounts and advertisements.

Councilmen Gillespie and Conlon both testified that their reason for denying plaintiff a theater license was identical with that expounded by Mayor Habhab.

Richard Davis, Jr., vice-president of plaintiff corporation testified that designating a movie XXX or multiple X rather than simply X was merely an advertising gimmick. He stated that any movie not submitted to the motion picture industry for approval, or those movies submitted and not approved, received X ratings.

Mr. Davis further testified that the movies intended to be shown at this theater were of the "XXX" variety and that plaintiff is currently operating similar theaters in Des Moines and Waterloo, Iowa.

Defendants Habhab, Conlon and Gillespie were recalled to testify and stated that their positions in regard to the issuance of a license for a triple X movie theater remained unchanged.

The final witness, Ed Breen, testified on behalf of the defendants. Mr. Breen, owner of the local Fort Dodge television and radio stations, testified that in his opinion "triple X" movies violated contemporary community standards and had no redeeming social value. On cross-examination, Mr. Breen stated that he had never seen or even knew for sure what "triple X" movies were or could he remember ever seeing an X rated film. He categorized the council's action as one of censorship.

At the end of all the testimony, plaintiff moved to strike paragraph (e) of the complaint which sought $15,000 in damages. The motion was sustained. Plaintiff is now seeking only injunctive relief.

Prior to any determination on the merits of plaintiff's complaint, the Court must first be satisfied as to the jurisdictional basis for this action. Plaintiff predicates federal jurisdiction on 28 U.S.C., Section 1343, 42 U.S.C., Section 1983, and 28 U.S.C., Section 2201.

The defendants attack the jurisdiction of the federal district court upon a variety of grounds including lack of requisite jurisdictional amount, lack of diversity, exclusive jurisdiction within state courts, and failure to exhaust remedies in state courts. Although not entirely clear to this Court, it appears that defendants also urge that the Civil Rights Act does not confer statutory jurisdiction upon the Court when the defendant members of the city council, in their capacity as local licensing authorities, act within their statutory authority to protect the welfare of the citizens of Fort Dodge. The plain answer to all of defendants' arguments is that they simply are not the law.

Neither diversity of citizenship nor amount in controversy is prerequisite to federal court jurisdiction of a cause of action asserted under the Civil Rights Act, section 1981 et seq., 42 U.S.C.A. Ortega v. Ragen, 216 F.2d 561 (7th Cir. 1954), cert. den., 349 U.S. 940, 75 S.Ct. 786, 99 L.Ed. 1268 (1955); Agnew v. City of Compton, 239 F.2d 226 (9th Cir. 1957), cert. den., 353 U.S. 959, 77 S.Ct. 868, 1 L.Ed.2d 910 (1957); Jones v. Alfred H. Mayer Co., 392 U.S. 409, 412, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968). When a party claims that licensing officials' denial of a license constitutes a deprivation under color of state law or ordinance of the rights of due process and equal protection of laws, he may correctly proceed under Section 1983 and jurisdiction exists under Section 1343, 28 U.S.C.A. Crews v. Undercofler, 249 F.Supp. 13 (N.D.Ga.1966), aff'd, 5 Cir., 371 F.2d 534 (1967). And the local officials are not immune from suit where such a violation of constitutional rights is alleged. Hornsby v. Allen, 326 F.2d 605 (5th Cir. 1964). Finally, when a party claims that his federal constitutional rights have been abridged by State administrative action or by those claiming to act under authority of State law, he is not required to exhaust judicial remedies in the State courts before resorting to federal courts for vindication of his rights. Hornsby, *supra*; Dove v. Parham, 181 F.Supp. 504 (E.D.Ark.1960), aff'd, 8 Cir., 282 F.2d 256 (1960); Baron v. O'Sullivan, 258 F.2d 336 (3rd Cir. 1958).

The plaintiff corporation asserts a denial of due process and of equal protection in the procedures used by the defendants to determine whether any motion pictures which might hereafter be exhibited by plaintiff are protected by the First Amendment. The Court does

not decide today whether any motion pictures hereafter exhibited are so protected, but only the issues of due process and equal protection in bringing that question to a determination. The Supreme Court has long held that a corporation is a person within the meaning of the equal protection and due process of law clauses. Grosjean v. American Press Co., Inc., 297 U.S. 233, 244, 56 S. Ct. 444, 80 L.Ed. 660 (1936). Thus, a corporate plaintiff has the same right to invoke Section 1983 as a basis for federal jurisdiction to challenge state procedures as does a natural person. Leslie Tobin Products, Inc. v. Rizzo, 305 F. Supp. 1135, 1138–1139 (E.D.Pa.1969).

In summation, the law is well settled that this Court has jurisdiction under 28 U.S.C.A., Section 1343, on a claim pursuant to 42 U.S.C.A., Section 1983, either to hear the plaintiff in an action for preliminary injunction or upon the merits of the entire matter for permanent injunctive relief. It is unnecessary to examine other allegations of jurisdiction by the plaintiff.

Having resolved the jurisdictional issue, the Court shall now consider the merits of plaintiff's complaint. Plaintiff contends in substance that defendants have denied plaintiff procedural due process in refusing to issue a theater license on the ground that the movies to be shown may be obscene.

It is obvious to the Court, based upon the testimony and other evidentiary matter introduced at the hearing, that defendants' action must be characterized as one of censorship. More accurately, since no movies have yet been shown, defendants have engaged in what is commonly referred to as pre-censorship.

■ Pre-censorship is not unconstitutional *per se* where motion pictures are concerned. Times Film Corp. v. City of Chicago, 365 U.S. 43, 81 S.Ct. 391, 5 L. Ed.2d 403 (1961). In Times Film Corporation, *supra*, the Supreme Court held that although motion pictures are included within the free speech and free press guaranties of the First and Fourteenth Amendments, there is no absolute freedom to exhibit publicly, at least once, every kind of motion picture. 365 U.S. at 46, 49–50, 81 S.Ct. 391, 5 L.Ed. 2d 403.

In Freedman v. Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965), the Supreme Court set forth the following criteria for a valid pre-censorship system:

1. The burden of proving that the film is not protected must rest on the censor.

2. The censor by his act alone may not be allowed to impose a final valid restraint.

3. Only a judicial determination may impose a final restraint.

4. The statutory procedure must insure a prompt, judicial decision to minimize the effect of an interim and possibly erroneous denial of a license.

Thus, the issue before the Court is not whether certain movies designated as "X" or "triple X" are *in fact* obscene. The Court today is making no ruling in that regard. It should be noted that even though certain of the testimony offered at the hearing did go to the issue of obscenity, that evidence is totally irrelevant to the issue at hand. All the Court is asked to determine in this case is whether the defendants have imposed a constitutional system of censorship pursuant to the Due Process Clause of the Fourteenth Amendment.

■ The *Freedman* case very clearly points out that pre-censorship is permissible if it utilizes procedural safeguards designed to obviate the dangers of a censorship system. Those safeguards have heretofore been enumerated. It is obvious that the procedures employed by defendants in refusing a theater license on the ground that the movies to be shown would be obscene do not comport with procedural due process as guaranteed by the Fourteenth Amendment and as set forth in *Freedman, supra*.

**1166**

The censor herein is the city council of Fort Dodge, Iowa. Assuming without deciding their authority to act in such a capacity, not one of the four safeguards established in *Freedman* have been satisfied. Once the Council has disapproved the license, the potential exhibitor must bear the burden of instituting judicial proceedings contrary to the first of the *Freedman* safeguards. Furthermore, the Council by its act alone has sought to impose a final restraint absent any judicial determination which is contrary to the second and third *Freedman* safeguards. Lastly, the Council's action does not insure a prompt, judicial decision to minimize the effect of a possibly erroneous denial of a license.

The Council's action of censorship, while no doubt in good faith, can only be termed patently unconstitutional. This is even more readily apparent when one realizes that the Council reached its decision without ever seeing any of the so-called "multiple X" movies. Thus, the Court finds that although a governmental body may legitimately engage in pre-censorship of movies, it may do so only under prescribed procedures. Defendants have deliberately chosen to ignore those procedures.

It is, therefore, ordered, adjudged and decreed that plaintiff's first cause of action is dismissed without prejudice and that the action against defendant Earl Kalsow is also dismissed.

It is further ordered, adjudged and decreed that defendants' actions in denying plaintiff a theater license on the basis that the movies to be shown may be obscene are unconstitutional.

It is further ordered, adjudged and decreed that defendants are hereby enjoined from refusing to issue a theater license on the basis that the movies to be shown may be obscene.

It is further ordered that plaintiff's claim for money damages is dismissed.