**STUDIO III, INC., Plaintiff,**

v.

**Stuart N. SMITH, as Mayor of the City of Ames, Iowa, et al., Defendants.**

**Civ. No. 10–192–C–2.**

United States District Court,
S. D. Iowa, C. D.

May 17, 1971.

C. A. Frerichs, Melvin H. Wolf, Waterloo, Iowa, for plaintiff.

James F. Bishop, City Atty., Don C. Day, Asst. City Atty., Ames, Iowa, for defendants.

## MEMORANDUM AND ORDER.

HANSON, District Judge.

On January 15, 1971, a complaint was filed by plaintiff seeking injunctive relief and declaratory judgment against defendants for alleged violation of plaintiff's constitutional rights under the United States Constitution. Plaintiff also asked for temporary injunctive process and, subsequently, also moved for summary judgment. All these matters were either resisted or answered by the defendants. All pending matters were set for hearing on April 23, 1971, at which time counsel for the respective parties agreed that the cause could be finally submitted on its merits. Thus, the motions for preliminary injunction and summary judgment need not be pursued further and are now moot.

Plaintiff corporation, Studio III, Inc., is one of a chain of so-called "Triple-X" movie theaters now being operated in the State of Iowa. Defendants are various city officials of Ames, Iowa as well as the City itself. The following facts explain the existing controversy: Plaintiff Studio III applied to the Ames City Council for a motion picture theater license for premises at 2536 Lincoln Way, Ames, Iowa. On December 2, 1970, defendant Councilmen denied Studio III's request for a license on the basis that the movies intended to be shown were obscene. Prior to the city council's refusal to issue a theater license, plaintiff's building permit had been revoked for the reason that until the city council decided the license issue, plaintiff should not be placed in the position of expending funds until a license was granted. Thus, the case involves the legality of defendants' actions in denying a theater license and revoking a building permit on the basis that movies intended to be shown by plaintiff were obscene.[1]

Prior to any discussion of the merits of plaintiff's complaint, the Court must

---

1. The movies plaintiff seeks to exhibit are usually not submitted to a rating board and therefore are automatically classified as an "X" rated film. The movies are advertised as "XXX" only as an advertising gimmick. Admission is on an "adults-only" basis with no one under 18 permitted.

first be satisfied as to jurisdiction. Plaintiff has alleged 28 U.S.C.A., Section 1343, and 42 U.S.C.A., Section 1983 as well as 28 U.S.C.A., Sections 2201, 2202 as bases of federal jurisdiction. This Court and others have had prior occasion to consider whether federal jurisdiction exists in this type of case and in each case the federal court accepted jurisdiction. See Mini Cinema 16, Inc. of Fort Dodge v. Habhab et al., 326 F. Supp. 1162 (N.D.Iowa, December 22, 1970); Mini 16 Inc. of Cedar Rapids v. Canney et al., No. 71–C–1–CR (N.D. Iowa, March 18, 1971). Thus, having determined jurisdiction, the merits of this controversy are ripe for decision.

█ In simple terms, the city council of Ames, Iowa has acted as a censor of movies. More accurately, since none of these movies have as yet been shown in Ames, the Ames council has engaged in what may be termed pre-censorship. As this Court remarked in *Mini Cinema 16 Inc. of Fort Dodge, supra*, pre-censorship or censorship by a state body is not unconstitutional per se as applied to motion pictures even though motion pictures are a form of speech and as such, are protected by the First Amendment to the United States Constitution. Times Film Corp. v. Chicago, 365 U.S. 43, 81 S.Ct. 391, 5 L.Ed.2d 403 (1961).

█ Freedom of speech is one of the basic freedoms in our American system of government and has always been afforded the highest protection against encroachment by either the State or Federal government. Any governmental action which purports to interfere with First Amendment freedoms, while not absolutely forbidden, is limited and the governmental body is compelled to go forward to justify any intrusion. Dennis v. United States, 341 U.S. 494 (1951). Therefore while motion pictures come within the purview of the First Amendment, an obscene motion picture is not entitled to First Amendment protection because obscenity is not constitutionally protected. Times Film Corp. v. Chicago, *supra*. Consequently,

a governmental body may prohibit the showing of movies on the basis of obscenity without violating either the First or Fourteenth Amendments of the United States Constitution *provided certain procedural safeguards are followed*. Accordingly, it has been held that even though the State may engage in censorship or pre-censorship of movies, certain procedural safeguards must be built into the censorship system so that First Amendment freedoms will not be unnecessarily or unwarrantedly proscribed. Freedman v. Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965).

The complaint, of course, controls the issues to be determined by the Court. To avoid any misunderstanding, the Court believes that it is desirable at this point to state the precise issue involved in this law suit. This Court is not being asked to decide whether a particular film is obscene. Plaintiff's complaint raises no such issue although defendants have persistently attempted to interject such an issue into this law suit and, in substance, convert a defense into an offense. Neither has this Court viewed any of these films for the simple reason that such a viewing would not in any way be material or germane to the present controversy. The only issue in this law suit and the only issue this Court is interested in is whether the defendants have followed legal and valid censorship procedures in regard to these movies and in denying the license and revoking the building permit.

█ The City Council of Ames, Iowa is a state governmental body. As such, it is bound to the same standard of lawful activity as any other subdivision of the State of Iowa as well as the State of Iowa herself. The *action taken by* defendants in this case in denying a theater license and revoking a building permit can only be characterized as a self-instituted system of censorship in a non-criminal proceeding. Freedman v. Maryland, *supra*, sets forth the procedural safeguards which any state censorship

system must comply with to be constitutionally permissible:

1. The burden of proving that the film is not protected must rest on the censor. The censor must have the burden of instituting judicial proceedings.

2. The censor by his act alone may not be allowed to impose a final valid restraint. Any restraint prior to judicial review can be imposed only briefly in order to preserve the status quo.

3. Only a judicial determination may impose a final restraint.

4. The statutory procedure must insure a prompt judicial decision to minimize the effect of an interim and possibly erroneous denial of a license.

It does not require a great amount of analysis to conclude that the system of censorship employed by defendants against plaintiff lacks those necessary and requisite safeguards dictated by the United States Supreme Court in Freedman v. Maryland. It is readily apparent that the system of censorship followed in this case does not comport in any manner whatsoever with the required safeguards.

■ The system of censorship pursued by defendant City Council herein shifts the burden of proof on the question of obscenity from the censor to the exhibitor so that it is the exhibitor who must institute judicial proceedings. Furthermore, the City Council's action in denying the license and revoking the building permit purports to be final action. Neither is there any provision for prompt judicial review to minimize the effect of an erroneous denial of a license. The judicial action now being pursued in this Court in no way fulfills

the requirements as set forth above. In short, because the system of censorship involved herein does not provide for procedural safeguards, defendants' actions are violative of plaintiff's constitutional rights.

Defendants have argued that the instant case is not analogous to those cases decided in the Northern District of Iowa involving these "Triple X" theaters. Mini Cinema 16 Inc. of Fort Dodge v. Habhab et al., *supra*; Mini Cinema 16 Inc. of Cedar Rapids v. Canney et al., *supra*. In each of these cases it was held that city council action amounting to censorship was violative of procedural due process under Freedman v. Maryland, *supra*, and said action was enjoined.

Defendants seek to distinguish these two cases on the basis that in the instant case it has been admitted that the movies to be shown are obscene. Thus, defendants contend that where an exhibitor of movies admits the obscenity of the movies, then the procedural safeguards imposed by Freedman v. Maryland are not applicable. The Court agrees completely with such an analysis. However, the Court, contrary to defendants' assertions, does not find that plaintiff, through its agents, has ever admitted or stated that the movies intended to be shown in Ames, Iowa were obscene.[2]

Defendants predicate their contention that plaintiff admits the movies intended to be shown in Ames are obscene upon statements made by Mr. Richard Davis, Jr., one of plaintiff's officers. A review of these statements made by Mr. Davis, which are contained in minutes of an Ames city council meeting, a par-

---

2. At the hearing on the merits, plaintiff's counsel for the limited purpose of summary judgment only but not for the purpose of either the preliminary injunction or the final decision on the merits did stipulate that if one of these representative films were shown to the Court, the Court would find the film obscene. The necessity and reasoning for this stipulation totally escapes this Court. However, since the motion for summary judgment is not being considered herein and the stipulation was limited to that matter alone, the Court need not take this stipulation into account. Suffice it to say, however, that if this matter were being pursued on the stipulation by plaintiff that the movies were in fact obscene, the Court in all probability would reach a result different from that arrived at today.

tial transcript of a state court proceeding and parts of a deposition, all of which are exhibits in this cause, as well as the testimony in this case, do not bear out defendants' contention. The movies have been described by Mr. Davis in terms of sexual content and that these movies were for adults only and that these movies would show the "entire spectrum of human sexual relations." The Ames City Council has decided, based on these statements and what they have either heard or seen in respect to these movies, that the same are obscene and that Mr. Davis so admits. The fact is that Mr. Davis has never stated that these movies were obscene.

To the contrary, he states that he does not consider any of the movies he has shown or would intend to show in Ames to be obscene. The Court is not saying that Mr. Davis' opinion is entitled to more weight than defendants as to whether these movies are in fact obscene. The Court has made the prior statements only to demonstrate that defendants' conclusion that Mr. Davis has admitted the obscenity of these movies is not supported by any evidence. Defendants have simply impressed their own conception of obscenity on Mr. Davis' remarks about the movies. It is precisely this type of non-judicial censoring that Freedman v. Maryland is intended to protect against.

Consequently, the Court finds that this cause of action is controlled by the principles set forth in Freedman v. Maryland and further that the procedures employed by defendants have not complied in any way with the necessary procedural safeguards of a state system of censorship and are therefore unconstitutional. Plaintiff is entitled to appropriate relief.

This is not to say that plaintiff may show obscene movies. Clearly the law does not permit such a thing. All the law requires is that proper and necessary procedures be followed in banning any form of expression, be it films, books, or magazines on the ground that matter contained therein is obscene. The necessity of such safeguards incidental to any censorship system is to protect against the inherent and obvious dangers of such a system.

Neither does this opinion purport to tell defendants or others in similar situations that they are powerless to prevent the introduction of obscene movies into a community. There are obscenity laws in the State of Iowa which can be enforced by local communities through its law enforcement personnel by seizing any material thought to be obscene and charging the exhibitor thereof with a violation of the appropriate obscenity statute. If the seized materials are then promptly submitted to a state court for an initial determination of obscenity, then the chances of violating basic constitutional rights will be minimized. Instead of pursuing such a course of action, however, defendants have deliberately chosen to follow a censoring procedure, premature in all aspects, which does not comport with constitutional safeguards.

Accordingly, it is hereby ordered that judgment shall be entered: (1) Declaring the actions of the defendants unconstitutional; (2) Enjoining defendants from refusing to issue a theater license and building permit to plaintiff on the basis that the movies intended to be shown are obscene; (3) Taxing costs to the respective parties, and (4) Dismissing the motions for preliminary injunctive relief and summary judgment as being moot.

The foregoing shall constitute the Court's findings of fact and conclusions of law pursuant to Rule 52(a), Federal Rules of Civil Procedure.