**Barb POLLITT, et al.**

v.

**Harry CONNICK, et al.**

**Civ. A. No. 83–3794.**

United States District Court, E.D. Louisiana.

Oct. 19, 1984.

H. Louis Sirkin, Cincinnati, Ohio, Ronald J. Rakosky, New Orleans, La., for plaintiffs, Barb Pollitt, et al.

William Campbell, Jr., and Thomas W. Milliner, New Orleans, La., for defendants, Harry Connick, et al.

ROBERT F. COLLINS, District Judge.

This matter is before the Court on motion for summary judgment, filed by plaintiffs. By this motion, plaintiffs request the Court to declare LSA–R.S. §§ 14:106 and 13:4711–4716 unconstitutional.

 Plaintiffs contend that LSA–R.S. § 14:106 suffers from four constitutional infirmities and that LSA–R.S. §§ 13:4711–4716 suffer from one constitutional infirmity. First, plaintiffs contend that LSA–R.S. § 14:106 is unconstitutionally vague and overbroad and, therefore, violates the first, fifth, and fourteenth amendments to the United States Constitution. Second, plaintiffs contend that paragraph D of LSA–R.S. § 14:106, which exempts certain categories of institutions and their employees and all projectionists from prosecution, violates the equal protection clause of the fourteenth amendment to the United States Constitution, and paragraph D is not severable. Third, plaintiffs contend that paragraph F of LSA–R.S. § 14:106, which requires an adversarial hearing prior to the issuance of an arrest warrant in some instances of alleged obscenity violations but not in others, violates the equal protection clause of the fourteenth amendment to the United States Constitution, and paragraph F is not severable. Fourth, plaintiffs contend that LSA–R.S. § 14:106 constitutes an impermissible prior restraint and has a chilling effect on presumptively protected conduct, because violation of the statute is in all instances a felony carrying cruel, unusual, and excessive punishment. Finally, plaintiffs also contend that LSA–R.S.. §§ 13:4711 through 4716, as they relate to obscenity, impose a prior restraint upon

presumptively protected activity and, therefore, must be declared unconstitutional.[1] The Court will address each of plaintiffs' five contentions seriatim.[2]

## I. *LSA–R.S. § 14:106 Not Vague or Overbroad*

■ The Court disagrees with plaintiffs' first assertion that LSA–R.S. § 14:106 is unconstitutionally vague and overbroad. In *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), the United States Supreme Court set forth the basic guidelines to be applied in the determination of obscenity. The precise language used in the *Miller* definition has been incorporated into Louisiana's obscenity statute —LSA–R.S. § 14:106. *See State v. Walden Book Co.*, 386 So.2d 342, 344 (La.1980). Therefore, in light of this Court's duty to follow majority positions of the United States Supreme Court, LSA–R.S. § 14:106 simply cannot be considered either vague or overbroad.

1. The Court notes that none of the plaintiffs has actually had an injunction or abatement order sought or imposed against them or their property under LSA–R.S. §§ 13:4711 to 4716. However, plaintiffs contend that defendant Harry Connick has threatened them with enforcement of those provisions. Defendant has not denied making this threat. Accordingly, the Court is satisfied that a sufficiently concrete controversy exists to warrant judicial resolution of the matter, and plaintiffs have standing to seek that judicial resolution.

2. Preliminarily, the Court notes that defendant Harry Connick contends that this Court should decline, under the *Younger* branch of the abstention doctrine, to rule on the constitutionality of these statutes, because "virtually all of the plaintiffs in this suit have active criminal cases pending in the state criminal court for violations of La.R.S. 14:106, the statute that they are attacking in this federal proceeding." Defendant Harry Connick's *Memorandum In Opposition To Motion For Summary Judgment* at 2. However, defendant's contention oversimplifies and misstates the situation facing this Court. Plaintiffs and plaintiff-intervenors have complained of a pattern of enforcement in which the police have arrested and rearrested them for alleged obscenity violations, but in most instances the district attorney has then either refused the charges or, if charges were accepted, did not actively prosecute the cases. The de-

## II. *Paragraph D of LSA–R.S. § 14:106 Unconstitutional But Severable*

■ Plaintiffs next contend that paragraph D of LSA–R.S. § 14:106 denies them the equal protection of the laws insofar as it exempts listed institutions and their employees, and also exempts movie projectionists, from prosecution for the criminal offense of obscenity.[3] In *State v. Luck*, 353 So.2d 225 (La.1977), the Supreme Court of Louisiana declared that paragraph D's exemption of particular institutions and their employees from prosecution under LSA–R.S. § 14:106 was unconstitutional. The *Luck* court stated that:

"The nonexempt persons or entities are deprived of the equal protection of the laws by a classification so made without rational basis for differentiation reasonably related to a valid governmental purpose. Louisiana has no legitimate interest in allowing a college, etc., to sell pornography for commercial gain, while prosecuting a commercial establishment next door for the same activity."

fendants have not denied that such is the case, although they have vehemently denied that any such pattern is the result of any concerted action, conspiracy, or other intentional and improper acts on their part. In light of these circumstances, it is apparent that *active* criminal actions are *not* pending against most of the plaintiffs and plaintiff-intervenors, and it may well be that most of the plaintiffs and plaintiff-intervenors will *not* have an adequate opportunity to raise these constitutional challenges in a state proceeding. Accordingly, abstention under *Younger* is inappropriate. *See Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982) (absent extraordinary circumstances, abstention under *Younger* is appropriate when there are ongoing state proceedings that implicate important state interests and in which adequate opportunity exists to raise constitutional challenges).

3. LSA–R.S. § 14:106 D provides:
The provisions of this Section do not apply to recognized and established schools, churches, museums, medical clinics, hospitals, physicians, public libraries, governmental agencies, quasi-governmental sponsored organizations and persons acting in their capacity as employees or agents of such organizations, or a person solely employed to operate a movie projector in a duly licensed theatre.

This Court agrees with the Louisiana Supreme Court's ruling in *Luck*, and, there-fore, this Court finds that paragraph D of LSA–R.S. § 14:106 violates the constitution to the extent that it exempts certain categories of institutions and their employees. However, to the extent that paragraph D exempts projectionists, it does not violate the equal protection clause of the United States Constitution. There is a definite distinction between the duties and relationship to the public of a projectionist as compared to the duties and relationship to the public of, *e.g.*, a cashier in a bookstore. The projectionist merely changes motion picture reels, which have previously been selected by the manager, runs the projector, and is generally isolated from theater customers. On the other hand, the cashier in a bookstore is frequently in direct contact with customers and, by his actions, allows the material he sells to be taken out of the store and circulated unchecked among the public at large. The legislation sub judice draws upon this distinction in duties and relationship to the public by imposing criminal liability only upon those persons truly responsible for the unrestrained dissemination of obscene material to the public at large. Therefore, the Court finds that subsection D of the statute does not, in this respect, deny plaintiffs' the equal protection of the law, since there does exist a rational relationship between the statutorily created distinction and the State's legitimate interest in the social welfare of its citizens. *See, e.g., People v. Victoria*, 96 Misc.2d 926, 409 N.Y.S.2d 937, 938 (N.Y.Crim.Ct.1978).

Although the Court finds that paragraph D is unconstitutional to the extent that it exempts from its strictures certain categories of institutions and their employees but not to the extent that it exempts projectionists, the Court does not agree with plaintiffs' contention that this judicial determi-nation of invalidity as to a portion of the statute so eviscerates the legislation that it must fall as a whole. On the contrary, this Court finds that the repugnant portion is severable from the remainder of the statute, which therefore must be upheld.

■ The constitutional portion of a statute is separately enforceable if it is independent from the unconstitutional portion, forms a complete act within itself, and after separation is reasonable in light of the act as originally enacted. " 'The test is whether or not the legislature would have passed the statute had it been presented with the invalid features removed.' " *State v. Johnson*, 343 So.2d 705, 708 (La. 1977) (quoting 2 Sutherland, *Statutes and Statutory Construction*, §§ 44.04 at 341–42 (Sands 4th ed. 1973)). This test is primarily one of ascertaining legislative intent by determining the main or dominant purpose of the enactment. " 'Where the purpose of the statute is defeated by the invalidity of part of the act, the entire act is void. Conversely, when the general object of the act can be achieved without the invalid part, the act will be upheld.' " *Id.* at 709 (quoting 2 Sutherland, *Statutes and Statutory Construction*, §§ 44.07 at 347 (Sands 4th ed. 1973)).

■ The obscenity statute was originally enacted by Act No. 274 of the 1974 regular session of the legislature. Louisiana legal scholars recognized that it was designed to fill the void created by two 1974 Louisiana Supreme Court decisions[4] invalidating the state's then existing obscenity statutes, as mandated in light of the United States Supreme Court's landmark decision in *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). *See Highlights of the 1974 Regular Session*, 35 La.L.Rev. 597, 601–05 (1975). Both the title[5] and the text of the 1974 act indicate that the main purpose of the legislation was to provide the state with an obscenity statute that would

---

4. *State v. McNutt,* 287 So.2d 478 (La.1974) and *State v. Shreveport News Agency, Inc.,* 287 So.2d 464 (La.1974).

5. "The title of the 1974 act declares that its purpose was 'to define the crime of obscenity, to provide penalties therefor, to provide for the applicability and construction of the Act, and to provide otherwise with respect thereto." *State v. Johnson,* 343 So.2d at 709 (quoting Acts 1974, No. 274, title).

be valid and enforceable in light of *Miller.* The legislature attempted to accomplish this purpose by adopting the *Miller* definition of obscenity and by specifying the types of depictions or descriptions of sexual conduct that could constitute obscenity under the act.

▬ The Court is convinced that the principal purpose of LSA–R.S. § 14:106 will not be defeated by the invalidation of that portion of paragraph D not concerning projectionists. The practical impact of eliminating paragraph D will be almost nil, because the types of institutions explicitly exempted by paragraph D will be effectively exempted anyway, under the definition of obscenity itself, found at LSA–R.S. § 14:106 A(2) and (3), since such institutions will rarely display hard core sexual material that "taken as a whole lacks serious literary, artistic, political, or scientific value," and even more rarely display such material "for its own sake, and for ensuing commercial gain." Without the invalid portion of paragraph D, LSA–R.S. § 14:106 forms a complete act within itself, and is reasonable in light of the act as originally enacted. Since the principal purpose of LSA–R.S. § 14:106 was and is to provide the state with a valid and enforceable obscenity statute, this Court concludes that the legislature would have passed the statute had it been presented with the invalid portion of paragraph D removed.[6] Accordingly, the Court finds that, although the portion of paragraph D exempting the enu-

merated institutions and their employees is unconstitutional, the invalid portion of paragraph D is severable from the remainder of paragraph D and from the remainder of LSA–R.S. § 14:106.

III. *Paragraph F(1) of LSA–R.S. § 14:106 Does Not Deny Plaintiffs The Equal Protection Of The Laws*

Plaintiffs' third contention is that paragraph F(1) of LSA–R.S. § 14:106 denies them the equal protection of the laws, because it grants a pre-arrest adversarial hearing, to determine if the material involved is obscene, to all purveyors of allegedly obscene material except those purveying material that shows "actual ultimate sexual acts or simulated or animated ultimate sexual acts when there is an explicit, closeup depiction of human genital organs so as to give the appearance of the consummation of ultimate sexual acts." LSA–R.S. § 14:106 F(1). The Court disagrees.

▬ The basic question before the Court is whether or not this disparate procedural treatment of purveyors of one type of obscene material and the purveyors of all other types of obscene material is supported by a sufficiently weighty governmental purpose and whether the means chosen in paragraph F(1) for achieving that purpose are sufficiently related to that end.[7] Plaintiffs argue that this disparate

**6.** The Court notes that the legislature's most recent attempt at fine tuning LSA–R.S. § 14:106 does not contain a severability clause. *Compare* Acts 1977, No. 97, § 4; Acts 1977, No. 717, § 4; Acts 1980, No. 464, § 2; Acts 1981, No. 159, § 2; Acts 1982, No. 680, § 2; *with* Acts 1983, No. 384. The presence of a severability clause raises the presumption of severability in fact. *See State v. Brown,* 389 So.2d 48, 51 (La.1980) (citing *State v. City of Baton Rouge,* 40 So.2d 477 (1949)). However, the absence of a severability clause does not necessitate a finding of nonseverability; it merely eliminates the presumption of severability. Without the benefit of the presumption of severability provided by the presence of a severability clause, the Court looks to the test for separate enforcement discussed in the text *supra.* Given the principal purpose of LSA–R.S. § 14:106 and the essential redundancy of paragraph D as it relates to the enumerated

institutions, the Court reiterates its conclusion that the legislature would have passed the statute even without the invalid portion and, accordingly, the remainder of the statute is separately enforceable.

**7.** In answering this basic question, which in generic form is common to all equal protection challenges, the Courts have analyzed the legislative classification then at issue under one of three levels of judicial scrutiny—strict scrutiny, intermediate scrutiny, or rational review—depending on the classification at issue. *Cleburne Living Center v. City of Cleburne, Texas,* 726 F.2d 191, 195 (5th Cir.1984). The strict scrutiny standard is applied if the classification at issue disadvantages a suspect class or impinges upon the exercise of a fundamental right. *Id.* at 195–96. Under the strict scrutiny standard, a statute

treatment must be analyzed under the strict scrutiny standard, because it impinges upon their fundamental first amendment rights of free speech and the press, and cannot withstand such scrutiny, because it serves no compelling governmental interest. This argument is without merit.

Since obscenity statutes do impinge upon the fundamental rights of free speech and the press, the line between that material which is obscene and that material which is not obscene (*i.e.*, between that which is not constitutionally protected and that which is constitutionally protected) must be very precisely drawn to serve the compelling governmental interest in safeguarding the public health, safety, and welfare against crime, antisocial behavior, and the other arguably ill effects of obscenity. *See Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973); *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973). The Louisiana legislature has very precisely drawn that line by explicitly incorporating the *Miller* definition of obscenity. *See* LSA–R.S. § 14:106 A(2)(a), (b).

█ Plaintiffs' equal protection challenge to paragraph F(1), however, does not concern the line between the obscene and the not obscene, between the constitutionally unprotected and the constitutionally protected. Rather, the challenged legislative classification in paragraph F(1) procedurally divides the obscene from the arguably more obscene, *neither* of which is constitutionally protected. *Miller*, 413 U.S. at 23, 93 S.Ct. at 2614 ("This much has been categorically settled by the Court, that ob-

scene material is unprotected by the First Amendment." *Id.*). Thus, this Court is not called upon to function in the role of guardian of the line against legislative encroachment on precious first amendment liberties, which role mandates and justifies judicial wielding of the burdensome strict scrutiny standard. Instead, the Court will give greater deference to the judgment of the legislature and test paragraph F(1) for mere rationality.[8]

█ Applying the rational review standard, the Court finds that the disparate procedural treatment accorded by paragraph F(1) of LSA–R.S. § 14:106 to purveyors of different types of obscene materials is constitutional. Paragraph F(1) provides a pre-arrest hearing in all instances of alleged obscenity offenses except when the offense charged is portrayal of ultimate sex acts *"when there is an explicit, close-up depiction of human genital organs so as to give the appearance of the consummation of ultimate sexual acts."* (emphasis added). The exception created in paragraph F(1) enables the authorities to take *immediate* legal action against purveyors of material that the legislature has determined is blatantly and presumptively obscene, without the delays inherent in a pre-arrest adversarial hearing, thereby minimizing public harm. Simultaneously, paragraph F(1) helps to protect the first amendment rights of purveyors of material that is not blatantly and presumptively obscene, that may arguably fall within the gray area straddling the border between the obscene and the not obscene, and that may argu-

---

must fall unless the classification at issue was precisely tailored to serve a compelling governmental interest. *Id.* at 196. The intermediate scrutiny standard applies when the line drawn though not facially invidious gives rise to recurring constitutional difficulties. *Id.* Under the intermediate scrutiny standard, a statute will fall unless it serves an important governmental objective and is substantially related to the achievement of that objective. *Id.* Finally, the rational review, or deferential scrutiny, standard applies if neither the strict nor intermediate scrutiny standards apply. *Id.* Under the rational review standard, the classification at

issue need only bear some fair relationship to a legitimate public purpose. *Id.*

8. The Court notes that the intermediate scrutiny standard is clearly inapplicable. That standard is usually employed in connection with so-called "semi-suspect" classes. *See, e.g., Cleburne Living Center v. City of Cleburne, Texas*, 726 F.2d 191, 196 n. 7, 197 (5th Cir.1984) (mental retardation); *see also, Craig v. Boren*, 429 U.S. 190, 197, 97 S.Ct. 451, 457, 50 L.Ed.2d 397 (1976) (gender). Thus, since no semi-suspect class is involved here, the Court will not apply the intermediate scrutiny standard in its analysis of the challenged classification.

ably not even be obscene at all. Thus, through paragraph F(1)'s disparate procedural treatment of purveyors of presumptively obscene material and purveyors of material that is not presumptively obscene, the legislature has attempted to achieve a rational balance between protection of the public health, safety and welfare and protection of individual rights.[9] Moreover, the Court is unable to find that the legislature chose an irrational point for drawing the line between the presumptively obscene and the not presumptively obscene. The legislature could rationally have concluded that material showing ultimate sexual acts with explicit, closeup depictions of the genitals and giving the appearance of consummation of ultimate sexual acts was blatantly and presumptively obscene, while concluding that the other types of hard core sexual conduct described in LSA–R.S. § 14:106 A(2)(b) [10] were not blatently and presumptively obscene.[11] That the legislature might have drawn the line *more* rationally is of no moment. So long as the legislative classification at issue bears *some* fair relationship to a legitimate public purpose, as paragraph F(1) clearly does here, this Court is not free to substitute its judgment for that of the legislature. Accordingly, the Court rejects plaintiffs' contention that LSA–R.S. 14:106 F denies them the equal protection of the laws.[12]

## IV. *LSA–R.S. § 14:106 Is Not A Prior Restraint And Has No Chilling Effect*

■ Plaintiffs' fourth contention is that LSA–R.S. § 14:106 constitutes an impermissible prior restraint and has a chilling effect on presumptively protected conduct, because violation of the statute is "a felony carrying cruel, unusual and excessive punishment." Plaintiffs' *Memorandum In Support of Motion For Summary Judgment* at 9. The Court disagrees.

This fourth contention is a confused juxtaposition of two common, but entirely distinct, grounds for challenging the constitu-

---

9. The Court notes that a pre-arrest hearing, as opposed to a pre-seizure hearing, is not constitutionally compelled in any instance. *State v. Johnson*, 343 So.2d at 710 (citing *Milky Way Productions, Inc. v. Leary*, 305 F.Supp. 288 (S.D. N.Y.1969), aff'd per curiam sub nom. *New York Feed Co. v. Leary*, 397 U.S. 98, 90 S.Ct. 817, 25 L.Ed.2d 78 (1970)). Thus, the legislature's provision of a pre-arrest hearing for purveyors of material that may arguably be protected by the first amendment deserves praise, not condemnation.

10. LSA–R.S. § 14:106 A(2)(b) defines "hard core sexual conduct" as:

the public portrayal, for its own sake, and for ensuing commercial gain of:

(i) Ultimate sexual acts, normal or perverted, actual, simulated, or animated, whether between human beings, animals, or an animal and a human being; or

(ii) Masturbation, excretory functions or lewd exhibition, actual, simulated, or animated, of the genitals, pubic hair, anus, vulva, or female breast nipples; or

(iii) Sadomasochistic abuse, meaning actual, simulated or animated, flagellation, or torture by or upon a person who is nude or clad in undergarments or in a costume that reveals the pubic hair, anus, vulva, genitals, or female breast nipples, or in the condition of being fettered, bound, or otherwise physically restrained, on the part of one so clothed; or

(iv) Actual, simulated, or animated touching, caressing, or fondling of, or other similar physical contact with a pubic area, anus, female breast nipple, covered or exposed, whether alone or between humans, animals, or a human and an animal, of the same or opposite sex, in an act of apparent sexual stimulation or gratification; or

(v) Actual, simulated, or animated stimulation of a human genital organ by any device whether or not the device is designed, manufactured, or marketed for such purpose.

11. For example, LSA–R.S. § 14:106 A(2)(b)(i) refers simply to portrayal of "ultimate sexual acts," but makes no mention of "explicit, close-up depiction of human genital organs" or of giving "the appearance of the consummation of ultimate sexual acts," as found in paragraph F(1). Clearly, the legislature could rationally have concluded that the latter, but not the former, is presumptively obscene.

12. Even if the Court found that paragraph F's disparate procedural treatment did violate the equal protection clause, that would not be helpful to plaintiffs. Since a pre-arrest hearing, as opposed to a pre-seizure hearing, is not constitutionally mandated in any instance, *see supra* n. 9, the Court could cure any equal protection defect by simply striking down paragraph F and severing it (assuming it is severable), thereby eliminating the pre-arrest hearing for all alleged violators of the obscenity statute.

tionality of a criminal statute, neither of which has merit in this instance. The first constitutional challenge raised by this contention is that the statute has a "chilling effect" and is a "prior restraint" on conduct that is presumptively protected by the first amendment. However, that challenge is essentially a reiteration of plaintiffs' first contention that the statute is unconstitutionally vague and overbroad. The Court, as previously indicated, has rejected that contention and, therefore, must reject this contention as well. The second constitutional challenge raised by this contention is that the penalty provision of the statute imposes a cruel, unusual, and excessive punishment on offenders. This contention

merits little discussion. Suffice it to say that this Court does not find the penalties [13] imposed for violation of the statute to be cruel, unusual, or excessive. Accordingly, the Court rejects plaintiffs' contention that LSA–R.S. § 14:106 constitutes a prior restraint and has a chilling effect on presumptively protected conduct, since its violators can be punished by neither cruel, unusual, nor excessive punishment.

## V. *Injunctions Under LSA–R.S. §§ 13:4711 et seq. Constitutional; Abatements Unconstitutional*

Plaintiffs' final contention is that LSA–R.S. §§ 13:4711 through 4716 [14] are uncon-

---

13. The penalties that can be imposed on violators of LSA–R.S. § 14:106 are found at paragraph G of the statute, which provides:

(1) On a first conviction, whoever commits the crime of obscenity shall be fined not less than one thousand dollars nor more than two thousand five hundred dollars, or imprisoned, with or without hard labor, for not less than six months nor more than three years, or both.

(2)(a) On a second conviction, the offender shall be imprisoned with or without hard labor for not less than six months nor more than three years, without benefit of probation, parole, or suspension of sentence, and in addition may be fined not less than two thousand five hundred dollars nor more than five thousand dollars.

(b) The imprisonment provided for in Subparagraph (a), may be imposed at court discretion if the court determines that the offender, due to his employment, could not avoid engagement in the offense. This Subparagraph (b) shall not apply to the manager or other person in charge of an establishment selling or exhibiting obscene material.

(3) On a third or subsequent conviction, the offender shall be imprisoned with or without hard labor for not less than two years nor more than five years, without benefit of probation, parole, or suspension of sentence, and in addition may be fined not less than five thousand dollars nor more than ten thousand dollars.

(4) When a violation of Paragraph (1), (2), or (3) of Subsection A of this Section is with or in the presence of an unmarried person under the age of seventeen years, the offender shall be fined not more than ten thousand dollars and shall be imprisoned, with or without hard labor, for not less than two years nor more than five years, without benefit of parole, probation, or suspension of sentence.

14. LSA–R.S. §§ 13:4711–4716, which together constitute Subpart A of Part I of Chapter 32 of Title 13, provide in full:

§ 4711. Definitions; right to enjoin; abatement

A. For the purposes of this Subpart, the following terms shall have the following definitions:

(1) "Maintenance of a nuisance" means to conduct, carry on, or knowingly permit to exist on one's premises a prohibited activity as defined in this Subsection.

(2) "Prohibited activity" means prostitution, as defined in this Subsection, or obscenity, as now or hereafter defined by the criminal laws of this state.

(3) "Proprietary party" means an owner, lessee, sublessee, or occupant of any premises covered by this Subpart.

(4) "Representative" means an officer, agent, employee, or other representative of a proprietary party.

(5) "Premises" means any building, structure, land, watercraft, or movable owned or occupied by any proprietary party or representative thereof.

(6) "Prostitution" means the practice by a person of indiscriminate sexual intercourse with another for compensation, or the solicitation by one person of another with the intent to engage in indiscriminate sexual intercourse with the latter for compensation.

B. Maintenance of a nuisance in or upon any premises by a proprietary party, his representative, or any person acting in active concert with him or them may be enjoined as provided in this Subpart. Maintenance of the same nuisance at any other location within the jurisdictional area of the court issuing the injunction by such individuals may be enjoined in such action.

C. An order of abatement directing the effectual closing of the premises in question may

stitutional as they relate to obscenity, because the granting of an injunction or order of abatement thereunder would operate as a prior restraint on presumptively pro-

be entered as part of the judgment in the case as provided in R.S. 13:4715.

§ 4712. Right to petition for injunction or order of abatement

The issuance of an injunction or order of abatement pursuant to this Subpart may be petitioned for by the following parties: the attorney general of the state of Louisiana, in the name of the state and of the respective parish and without payment of any costs; the district attorney, in the name of the respective parish and without payment of any costs; the sheriff, through his attorney or designated representative, in the name of the respective parish and without the payment of any costs; the governing authority of the respective municipality, parish, or consolidated city-parish government, through its attorney or other designated representative in the name of the respective municipality, parish, or city-parish government and without payment of any costs.

§ 4713. Injunction proceedings; procedure

A. Application for injunctive relief afforded by this Section shall be by petition.

B. After a petition for an injunction has been filed, notice thereof shall be promptly served on the adverse party and a preliminary hearing shall be held within twenty-four hours from the time such notice is served. If, following the preliminary hearing, an independent judicial determination is made that there is probable cause to believe that maintenance of a nuisance, as defined in R.S. 13:4711, exists, an order granting a preliminary injunction may issue describing on its face in reasonable detail the conduct sought to be permanently enjoined.

C. Regardless of whether or not a preliminary injunction has been granted, an adversary hearing shall be held not less than five days nor more than ten days after the preliminary hearing, or within such additional reasonable time to which the adverse party consents. The court shall render its judgment within forty-eight hours following the conclusion of the adversary hearing. If, following the adversary hearing, an independent judicial determination is made that maintenance of a nuisance, as defined in R.S. 13:4711, does in fact exist, an order granting a final injunction may issue describing on its face in reasonable detail the conduct permanently enjoined.

D. An order granting the preliminary or final injunctive relief afforded by this Section shall be effective against the parties enjoined, their officers, agents, representatives, employees, counsel or any other person or persons in active concert or participating with them, from the time actual knowledge of the order is received by personal service or otherwise.

E. In all cases when the prohibited activity alleged is obscenity, no injunction shall be granted unless the court determines in a prior contradictory hearing that the conduct or activities alleged to be obscene are not protected by the constitutions of the United States or the state of Louisiana.

F. The defendant in the injunction proceedings may appeal to the court of competent jurisdiction an order granting a final injunction, but the appeal shall not stay the enforcement of the injunctive relief or an order of abatement granted in the order. Such appeal shall be perfected within five calendar days from the rendition of the order and shall be made returnable to the appropriate appellate court in not more than fifteen calendar days from the rendition of the order. The appeal shall be heard with the greatest possible expedition, giving the proceedings preference over all matters except other matters of the same character. The applicant for the injunction may appeal to the court of competent jurisdiction an order denying the final injunction or denying an order of abatement.

§ 4714. Violations of injunction; punishment

A violation of the provisions of an injunction issued in a cause instituted under the provisions of this Subpart shall constitute a contempt of court. A person found guilty of such contempt shall be punished by a fine of not less than one hundred dollars nor more than five hundred dollars, or by imprisonment in the parish prison for a period of not more than one year, or both. On conviction for a second or subsequent contempt the offender shall be punished by both fine and imprisonment.

§ 4715. Order of abatement

If it is established in an action under the provisions of this Subpart that maintenance of a nuisance exists and that the owner knew of its existence, an order of abatement may be entered as part of the judgment rendered in the case. The order of abatement shall direct the effectual closing of the premises for a period of five years, unless sooner released.

Any person who in any manner uses premises he knows have been so directed to be closed shall be guilty of contempt of court and punished therefor as provided in R.S. 13:4714.

§ 4716. Release of property and discontinuance of action upon giving of bond; violations

A. If, after an order of abatement has been entered, the owner appears and pays all costs of the proceeding and files a bond with surety or sureties, bond in solido, to be approved by the clerk, in an amount to be ascertained by the court but said bond shall not exceed the sum of fifty thousand dollars, conditioned that he will immediately abate the nuisance

tected communicative activity. Defendant Harry Connick contends that the prior restraint problems asserted by plaintiffs are cured by the pre-injunction adversarial hearing required by LSA–R.S. § 13:4713 E when the subject of the injunction is obscenity. The Court agrees in part and disagrees in part with the contentions of both plaintiffs and defendant.

The question is whether the statutes under attack operate as an unconstitutional prior restraint on presumptively protected free speech. In answering this question, this Court is guided by a long and unwavering line of United States Supreme Court decisions [15] and a vastly overwhelming majority of lower court decisions.[16] These decisions establish that the first amendment permits injunctions against the future dissemination of *particular items* that have previously been judicially determined obscene, but it does *not* permit blanket injunctions against dissemination of materials not yet judicially determined ob-

scene, regardless of the increased probability, due to the disseminator's prior track record, that the materials will actually be obscene. The rationale for this distinction has been set forth by the Fifth Circuit as follows:

> An order banning the exhibition of unnamed "obscene" films would prohibit the showing of films that have not been judicially declared obscene, as well as films that may not have been even produced. Such a blanket ban is not rendered unobjectionable by the interweaving of threa[d]s of language from obscenity statutes, for the end result is a sweeping prohibition against the screening of obscene films in general. Incorporation of the statutory definition of obscenity—usually a listing of forbidden sexual acts or acrobatics—merely begs the question, for few of us have the omniscience to determine, in advance of a final judicial ruling, whether a film is legally obscene. Moreover, it is possible

for a period of five years thereafter, the court may, if satisfied of his good faith, order the release of the premises so closed under the order of abatement. Such release shall not affect any action against any person whatsoever.

B. If the bond is given and all costs therein are paid before judgment and order of abatement, the action shall be thereby discontinued as to only the premises.

C. In the event such bond is given and the premises released, each day that the owner knowingly permits the premises or any part thereof to be used for such prohibited activity during the term of the bond shall warrant a forfeiture of one hundred dollars under the bond for each day on which the premises are so used. Collection thereof shall be had by rule taken in the original action against the principal and sureties thereon, or either of them, and the release shall be revoked.

No forfeiture under the bond shall relieve the owner from any prosecution for contempt, and the consequences thereof. The penalty under the bond and the penalty for contempt shall be cumulative. The release of the property under the provisions of this Section shall not release it from any judgment, penalty, lien or liability to which it may be subject by law.

**15.** See, e.g., *Vance v. Universal Amusement Co.,* 445 U.S. 308, 100 S.Ct. 1156, 63 L.Ed.2d 413 (1980); *Southeastern Promotions, Ltd. v. Con-*

*rad,* 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975); *Organization for a Better Austin v. Keefe,* 402 U.S. 415, 91 S.Ct. 1575, 29 L.Ed.2d 1 (1971); *Freedman v. Maryland,* 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965); *Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 85 S.Ct. 631, 9 L.Ed.2d 584 (1963); *Times Film Corp. v. Chicago,* 365 U.S. 43, 81 S.Ct. 391, 5 L.Ed.2d 403 (1961); *Kingsley Books, Inc. v. Brown,* 354 U.S. 436, 77 S.Ct. 1325, 1 L.Ed.2d 1469 (1957); *Near v. Minnesota,* 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931).

**16.** See, e.g., *Universal Amusement Co. v. Vance,* 587 F.2d 159 (5th Cir.1978); *Cornflower Entertainment, Inc. v. Salt Lake City Corp.,* 485 F.Supp. 777 (D.Utah 1980); *Genusa v. City of Peoria,* 475 F.Supp. 1199 (C.D.Ill.1979); *Bayside Enterprises, Inc. v. Carson,* 470 F.Supp. 1140 (M.D.Fla.1979); *Natco Theatres, Inc., v. Ratner,* 463 F.Supp. 1124 (S.D.N.Y.1979); *Fehlhaber v. North Carolina,* 445 F.Supp. 130 (E.D.N.C.1978); *Avon 42nd Street Corp. v. Myerson,* 352 F.Supp. 994 (S.D.N.Y.1972); *Mini Cinema 16 Inc. of Fort Dodge v. Habhab,* 326 F.Supp. 1162 (N.D.Iowa 1970); *Oregon Bookmark Corp. v. Schrunk,* 321 F.Supp. 639 (D.Or.1970); *Parish of Jefferson v. Bayou Landing Ltd., Inc.,* 350 So.2d 158 (La. 1977); *Gulf States Theatre of Louisiana, Inc. v. Richardson,* 287 So.2d 480 (La.1973); *Giarrusso v. D'Iberville Gallery,* 295 So.2d 891 (La.App. 1974). *But see, 106 Forsyth Corp. v. Bishop,* 482 F.2d 280 (5th Cir.1973); *Bay Area News, Inc. v. Poe,* 364 So.2d 830 (Fla.App.1978).

that a film containing many of the acts listed in the statute may eventually be held not to be obscene, since the work must be taken as a whole, *Miller v. California, supra,* and since state law cannot define the "contemporary community standards" that must be applied by the fact finder. *Smith v. United States,* 431 U.S. 291, 97 S.Ct. 1756, 52 L.Ed.2d 324 (1977). An injunction that forbids the showing of any film portraying the particular acts enumerated in the obscenity statute suppresses future films because past films have been deemed offensive. As Chief Justice Hughes wrote in *Near v. Minnesota, supra,* 283 U.S. at 713, 51 S.Ct. at 630, "[t]his is of the essence of censorship."

*Universal Amusement Co., Inc. v. Vance,* 587 F.2d 159, 169 (5th Cir.1978).

These decisions compel this Court to conclude that the injunctive remedy provided for in the challenged statutes is constitutional, but the abatement remedy is unconstitutional as it relates to obscenity.[17] The injunctive remedy, provided for in LSA–R.S. §§ 13:4711 B, 4712, 4713 & 4714, is constitutional, because this Court finds it can only be utilized to enjoin the displaying of particular materials that previously have been judicially determined to be obscene. *See* LSA–R.S. § 13:4713 E. The injunctive remedy cannot be utilized to obtain a blanket injunction against materials not yet judicially found obscene.[18] *Id.* On the other

hand, the abatement remedy, provided for in LSA–R.S. § 13:4711 C, 4712, 4715 & 4716, is unconstitutional as it relates to obscenity, because it can be utilized to stop, based solely on past performance, the future operations of a business that disseminates presumptively protected materials.[19] Since LSA–R.S. § 13:4713 E clearly does not apply to abatement proceedings, the abate remedy, unlike the injunction remedy, can be utilized to obtain a blanket ban against materials not yet judicially found obscene.[20] Accordingly, the abatement remedy, as it relates to obscenity, must fail.

## VI. *Summary*

The Court's findings hereinabove can be summarized as follows:

(1) LSA–R.S. § 14:106 is not unconstitutionally vague or overbroad.

(2) LSA–R.S. § 14:106 D is unconstitutional in its exemption of the enumerated categories of institution. LSA–R.S. § 14:106 D is not unconstitutional in its exemption of projectionists. The unconstitutional portion of paragraph D is severable from the remainder of paragraph D and from the remainder of LSA–R.S. § 14:106.

(3) LSA–R.S. § 14:106 is not unconstitutional in its disparate procedural treatment of alleged disseminators of different types of obscene materials.

---

**17.** The Court notes preliminarily that the *Pullman* branch of the abstention doctrine does not compel this Court to decline to rule on the constitutionality of these injunction and abatement statutes. Under *Railroad Commission v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), federal courts should ordinarily refrain from ruling on the constitutionality of a state statute if the state law is unclear and is capable of construction by state courts in a manner that would avoid the constitutional question. *Pullman* does not require abstention here, because: (1) as to the injunctive remedy, the Court's own interpretation of those statutory provisions enables them to withstand constitutional challenge; and, (2) as to the abatement remedy, the Court is convinced that no possible interpretation of those statutory provisions can withstand constitutional challenge.

**18.** Thus, in short, LSA–R.S. § 13:4713 E provides the procedural safeguards necessary for

the enjoining of obscene materials, thereby saving the Louisiana obscene nuisance injunction provisions from the defects found fatal to similar Texas provisions in *Vance.*

**19.** It is certainly arguable that "the application of this [abatement remedy] is based on penalty for illegal use, not prior restraint of a possible future permissible use." *Giarrusso v. D'Iberville Gallery,* 295 So.2d 891, 894 (La.App.1974) (Boutall, J. concurring in result). Nevertheless, like the author of the quote, this Court feels constrained by precedent to reject this argument.

**20.** Thus, in short, the abatement provisions contain none of the safeguards necessary in this area and, therefore, suffers from essentially the same constitutional infirmities as the Texas statutes struck down in *Vance.*

(4) LSA–R.S. § 14:106 is not an unconstitutional prior restraint, and has no unconstitutional chilling effect, on presumptively protected conduct. Paragraph G does not provide for cruel, unusual, or excessive punishment of violators of LSA–R.S. § 14:106.

(5) The injunctive remedy, available under LSA–R.S. §§ 13:4711 B, 4712, 4713 & 4714, is constitutional as it relates to the enjoining of the dissemination of particular materials previously judicially found obscene. The abatement remedy, available under LSA–R.S. §§ 13:4711 C, 4712, 4715 & 4716, is unconstitutional as it relates to the closing of a premises for obscenity violations by the owner.